Daniel HERMAN and Alice
Herman, Plaintiffs,

v.

WELLAND CHEMICAL, LTD., et
al., Defendants.

John CURTIS and Sharon
Curtis, Plaintiffs,

v.

WELLAND CHEMICAL, LTD., et
al., Defendants.

Civ. Nos. 83–491, 83–492.

United States District Court,
M.D. Pennsylvania.

Feb. 28, 1984.

Mark S. Love, Stroudsburg, Pa., for plaintiffs.

John R. Lenahan, Sr., Lenahan & Dempsey, Scranton, Pa., for Vallance Brown and Co.

Joseph A. Lach, Hourigan, Kluger, Spohrer & Quinn, Wilkes-Barre, Pa., for James A. Gillespie.

Mark A. Welge, Philadelphia, Pa., for Welland Chemical, Ltd.

Timothy E. Foley, Scranton, Pa., for Lamco Leasing, Ltd. and James A. Gillespie.

Kent H. Herman, Allentown, Pa., for William A. Orrach.

Howard Berman, Wilkes-Barre, Pa., for Aco-Assman of Canada, Ltd.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

The plaintiffs in the above-captioned actions seek to recover damages for injuries arising from an automobile accident during which defendant Orrach's car struck plaintiffs Daniel Herman and John Curtis. The plaintiffs began their actions in the Court of Common Pleas, Monroe County, Pennsylvania on August 19, 1982. The defendants removed the case to this court in April 1983, relying upon the diversity of the parties' citizenship.

Defendant Welland Chemical, Ltd. (Welland) has moved to dismiss the claims asserted against it. For the reasons set forth below, the motion to dismiss will be granted as to the plaintiff's claims regarding absolute liability and the claims of the plaintiff-wives concerning negligent infliction of emotional distress. The motion to dismiss will be denied in all other respects.

## FACTUAL BACKGROUND

In considering Welland's motion to dismiss, the court is bound to accept as true the allegations set forth in the plaintiffs' complaints. According to the plaintiffs' allegations, Welland agreed to sell, and to ship from its plant in Canada, 18 tons of aluminum chloride anhydrous to a company in New Jersey. Welland obtained a truck, a flatbed trailer and a driver and loaded the chemical into 12 polyethylene pallet hoppers. The hoppers were placed on the trailer and were secured with chains, binders and hooks.[1] On or about February 1, 1982, the truck began its journey from Canada to New Jersey.

Proceeding eastbound on Interstate Highway 80, the truck had reached Stroud Township in Monroe County, Pennsylvania at approximately 4:30 a.m. on February 3, 1982. According to the complaint, the driver lost control of the truck at about this point. The rear portion of the trailer allegedly struck the concrete barrier dividing the east and westbound lanes of the highway. Eight hoppers fell from the trailer, and several of the containers ruptured, causing the chemical to spill on the roadway. Because it had been raining that morning, the pavement was wet. The chemical reacted with the water from the rain, creating a cloud of hydrochloric gas.

State, County and Stroud Township officials assembled a task force to respond to the danger posed by the hydrochloric gas. A ten mile stretch of Route 80 was closed in both directions. A few miles east of the disabled truck, in East Stroudsburg, some volunteer firemen were dispatched and told to help reroute motorists off the westbound lane of the highway. Plaintiffs Daniel Herman and John Curtis were among this group of firemen. Lit flares were placed along the road to aid the firemen in merging traffic into the right-hand lane and eventually off the highway. The complaint asserts that plaintiff Herman was directing traffic by holding a flare in his hand and waving it in the desired direction.

Six hours after the chemical spill and at least one hour after the flares had been placed along the highway, defendant Orrach approached the firemen in his automobile, traveling westerly in the center lane. According to the complaint, Orrach "caused his vehicle to run over several flares, proceed[ed] upon a closed area of highway, and str[uck] the [p]laintiff[s] where [they] stood" directing traffic. Both plaintiffs were injured severely.

To support the liability of Welland for their injuries, the plaintiffs have asserted claims based upon negligence, strict products liability and absolute liability theories. In addition, the wives of the injured plaintiffs have set forth claims for loss of consortium and negligent infliction of emotional harm. Welland has moved to dismiss

---

**1.** Also named as defendants by the plaintiffs are the driver, the company leasing the truck and trailer to Welland, the driver's employer, the manufacturer of the hoppers and the maker of the chains and hooks used to secure the cargo. These defendants have not moved to dismiss.

each of these counts for failure to state a claim upon which relief can be granted.

## ABSOLUTE LIABILITY

■ The absolute liability counts can be dismissed without extended discussion, for a valid claim clearly is not stated under that theory. The Pennsylvania Supreme Court has adopted the doctrine embodied in § 519 of the Restatement of Torts which states that one who carries on an ultrahazardous activity may be held absolutely liable for injuries resulting from that activity. *See, e.g., McCown v. International Harvester Co.,* 463 Pa. 13, 17 n. 5, 342 A.2d 381 (1975); *Lobozzo v. Adam Eidemiller Co.,* 437 Pa. 360 & n. 1, 263 A.2d 432 (1970); *Federoff v. Harrison Construction Co.,* 362 Pa. 181, 184, 66 A.2d 817 (1949). While the parties have cited no case holding that the activity of Welland falls within § 519 of the Restatement ("ultrahazardous" activities) or § 519 of the Restatement Second ("abnormally dangerous" activities), the court will assume for the plaintiffs' benefit that a Pennsylvania court would so decide. Even assuming that the doctrine of absolute liability could be applied to the shipment of chemicals, the plaintiffs' claims must fail, for such responsibility "is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous." Restatement (Second) of Torts § 519 & Comment e. The kind of harm suffered in the present case does not, as a matter of law, fall within the scope of the risks making the shipment of chemicals abnormally dangerous. Accordingly, no valid claim is stated.

## NEGLIGENCE

■ To support its motion to dismiss the plaintiff's negligence claims, Welland argues that it breached no duty toward them, that proximate causation is absent and that Orrach's conduct was a superceding cause.

The court will consider these arguments *seriatim.*

*Duty* In asserting that no duty was owed toward the instant plaintiffs, Welland appears to posit that this case involves a situation akin to that encountered by Justice (then Chief Judge of the State of New York) Cardozo in *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928). In *Palsgraf,* Justice Cardozo enunciated the doctrine that there can be no negligence toward a plaintiff who is not within the foreseeable "orbit of danger." Explaining that such an unforeseeable plaintiff is owed no duty, Cardozo stated that "[t]he risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Id.; accord, Dahlstrom v. Shrum,* 368 Pa. 423, 425, 84 A.2d 289 (1951) ("The test of negligence is whether the wrongdoer could have anticipated and foreseen the likelihood of harm to the injured person, resulting from his act.").

To the extent that Welland argues that these plaintiffs may not recover on the ground that they were not, *as a matter of law,* within the foreseeable zone of harm, the court rejects this contention by looking to Justice Cardozo's comments in another case:

Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperiled victim; it is a wrong also to his rescuer.

*Wagner v. International R. Co.,* 232 N.Y. 176, 180, 133 N.E. 437 (1921). Cardozo, then, believed that rescuers always should be regarded as foreseeable plaintiffs. Prosser, *Handbook of the Law of Torts* § 43 at 258–59 (4th ed. 1971).[2] Without

---

**2.** While Prosser cautioned that "[o]ne may perhaps swallow this, with a grain of salt," Prosser, *supra,* § 43 at 259, this court is not required here to endorse, criticize or reject Cardozo's approach. Inasmuch as the court is faced only with a motion to dismiss, it is sufficient merely to note that reasonable minds may differ on the question.

deciding whether the plaintiffs were foreseeable plaintiffs, the court observes that the point at which they stood on the highway may be considered by a jury as having been a position of relative safety, it being a number of miles away from the chemical spill. By the same token, however, a jury may find that the spill presented a foreseeable danger to all those within an extended radius. Since reasonable people can differ regarding this question, the court is precluded from deciding it as a matter of law.

■ Welland also asserts that even if the plaintiffs were owed a duty, that duty does not include an obligation to protect them from the character of harm suffered here. Specifically, it is asserted:

> In this case it might be argued that Welland owed plaintiffs a duty to refrain from injuring them by escape of poisonous gas or from falling hoppers. That duty does not extend, nor should it, to the unforeseeable risk of injury from reckless and careless motorists on the roadway.

Brief in Support of Welland's Motion to Dismiss at 29, Document 10 of the Record. The difficulty with this position is that once the actor has subjected the plaintiff to a foreseeable risk of harm, he has breached a duty owing to the plaintiff and is considered to have been negligent. Having subjected the plaintiff to a foreseeable risk of harm, the actor is responsible for all consequences "which follow in a natural sequence of events" even if the precise consequences are not foreseeable. *Hoover v. Sackett*, 221 Pa.Super. 447, 451–52, 292 A.2d 461 (1972). Hence, under Pennsylvania law, Welland's contention that it cannot be held liable for "unforeseen consequences" must be rejected.

*"Proximate" or "legal" causation* Welland next argues that even if it negligently transported the chemicals, that negligence did not proximately cause the plaintiffs' injuries and, hence, there can be no recovery. Before determining the existence of "legal" or "proximate" causation in a given case, the fact-finder first must decide whether factual causation is present. The "cause-in-fact" question implicates "a *de minimis* standard of causation, under which even the most remote and insignificant force may be considered the cause of an occurrence." *Takach v. B.M. Root Co.*, 279 Pa.Super. 167, 171, 420 A.2d 1084 (1980). The cause-in-fact question does not appear to be a serious issue here, for the parties seem to agree that but for the chemical spill, the plaintiffs would not have been on the highway on the date they incurred their injuries.

■ The much more difficult question is that of proximate causation. This concept "generally denotes more than mere causation-in-fact, and serves as a means by which courts are able to place practical limits on liability as a matter of policy." *Wisniewski v. Great A. & P. Tea Co.*, 226 Pa.Super. 574, 581, 323 A.2d 744 (1974). The Supreme Court of Pennsylvania has explained:

> Whether the issue is discussed in terms of *proximate cause or legal cause* the underlying considerations and the result are the same. Under the older and more traditional approach the issue was whether the defendant's conduct was a proximate cause or a remote cause. Under the Restatement approach the issue is whether the defendant's conduct was, on the one hand, a 'substantial factor' or a 'substantial cause' or, on the other hand, whether the defendant's conduct was an 'insignificant cause' or a 'negligible cause.' See Section 431, Restatement of Torts, Second. The determination of the issue simply involves the making of a judgment as to whether the defendant's conduct although a cause in the 'but for' sense is so insignificant that no ordinary mind would think of it as a cause for which a defendant should be held responsible.

*Ford v. Jeffries*, 474 Pa. 588, 594–95, 379 A.2d 111 (1977) (emphasis in original). There are a number of considerations which are deemed relevant in deciding whether negligent conduct constitutes a substantial factor in producing injury. *See* Restatement (Second) of Torts § 433.

These considerations include the number of other factors which contributed in producing the injury, the extent to which they had an effect in producing it, whether the defect created a force which operated continuously and actively up to the time of the injury, and the degree to which time elapsed between the tortious conduct and the injury. *Id.; see Wisniewski v. Great A. & P. Tea Co.,* 226 Pa.Super. at 582, 323 A.2d 744.

In the instant case, the court finds relevant some of the considerations mentioned in section 433 of the Restatement (Second). From the pleadings, it does indeed appear that a number of factors contributed to produce plaintiff's injuries. In addition, it is undisputed that the plaintiffs were struck by Orrach's car nearly six hours after Welland's product was spilled on the highway. However, the court cannot, from the pleadings, determine the degree to which each contributing factor had an effect upon the relevant events and it is impossible at this time to state that the six hour lapse of time has any legal significance. Moreover, a holding that the alleged defect did not, as a matter of law, create a "continuous force" would seem inconsistent with the court's obligation to construe the pleadings in plaintiffs' favor on this motion to dismiss.

It is well settled that "[t]he determination of whether the conduct of the defendant was a substantial cause or an insignificant cause of plaintiffs' harm should not be taken from the jury if the jury may reasonably differ as to whether the conduct of the defendant was a substantial cause or an insignificant cause." *Ford v. Jeffries,* 474 Pa. at 595, 379 A.2d 111, *see also Hoover v. Sackett,* 221 Pa.Su-

per. at 451, 292 A.2d 461. Inasmuch as the court cannot rule as a matter of law that proximate cause is absent at this point, Welland's motion to dismiss on this ground must be denied.

*Superceding cause* Welland next argues that even if its conduct amounted to negligence and proximately caused the plaintiffs' injuries, the conduct of defendant Orrach constitutes a superceding cause excusing the chemical company from liability. Under Pennsylvania law, "the mere happenstance" of an intervening negligent act will not relieve the original tortfeasor of liability. *Sherk v. Daisy-Heddon,* 498 Pa. 594, 634, 450 A.2d 615 (1982) (Larsen, J., dissenting); *see Grainy v. Campbell,* 493 Pa. 88, 425 A.2d 379 (1981). The Supreme Court of Pennsylvania has adopted section 447 of the Restatement (Second)[3] as embodying the pertinent rule of law. *See Estate of Flickinger v. Ritsky,* 452 Pa. 69, 74, 305 A.2d 40 (1973). The *Flickinger* Court summarized the rule of § 447, stating that "[a]n intervening negligent act will not be a superceding cause ... *if* that actor at the time of his negligent act *should have realized* that another person's negligence might cause harm; or, if *a reasonable man* would not regard the occurrence of the intervening negligence as *highly extraordinary;* or, if the intervening act is not *extraordinarily negligent." Id.* at 75, 305 A.2d 40 (emphasis in original). Under this formulation of the relevant standard, it is clear that the court cannot rule that Orrach's conduct was a superceding cause as a matter of law. Indeed, the *Flickinger* Court emphasized that § 447 presents factual questions which normally must be decided by the jury.

---

**3.** Section 447 of the Restatement (Second) provides:

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.

On the instant record the court cannot exclude the possibility that, at the time of its alleged negligence, Welland "should have realized that another person's negligence might cause harm." A jury might very well find that the negligent transport of chemicals foreseeably could lead to the closing of an interstate highway and increase the likelihood of attendant traffic accidents. *Accord, Grainy v. Campbell,* 493 Pa. 88 at 92–93, 425 A.2d 379. Similarly, the court cannot rule that "a reasonable man" would, as a matter of law, consider the occurrence of the present accident to be "highly extraordinary." *Id.* Finally, the court cannot say that Orrach's conduct, as pleaded, was extraordinarily negligent, or "performed with disregard for a known and appreciated danger." *See* 452 Pa. at 76–77, 305 A.2d 40. For example, after some evidence is adduced, it may very well appear that Orrach did not even see the two firemen. For purposes of the present motion, however, it is sufficient to state that this is unclear from the pleadings. This being the case, the court cannot rule that Orrach's conduct excuses Welland from liability as a matter of law.

## STRICT PRODUCTS LIABILITY

■ As to the strict products liability theory advanced by the plaintiffs, Welland argues that:

Plaintiffs are not within the orbit of danger created by the allegedly defective product. They did not use or consume the chemical nor did they enjoy its benefits. They did not repair or work with it. Plaintiffs were not remote users or consumers or even bystanders injured by the product. They stand outside every class of user, consumer or bystander capable of recovering damages due to product defect. The product did not injure them; Orrach did.

Brief in Support of Welland's Motion to Dismiss at 37, Document 10 of the Record. The Pennsylvania Supreme Court has adopted section 402A of the Restatement (Second) of Torts. *See Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966).[4] That section by its own terms applies to "users" or "consumers" of the allegedly defective product. The drafters of the section "expresse[d] neither approval nor disapproval of expansion of the rule" to permit recovery by casual bystanders who come in contact with the product. *See* Restatement (Second) of Torts § 402A, comment o. However, in *Fedorchick v. Massey-Ferguson, Inc.,* 438 F.Supp. 60 (E.D.Pa.1977), *aff'd,* 577 F.2d 725 (3d Cir.1978), Judge Bechtle of the Eastern District of Pennsylvania held that "Pennsylvania appellate courts, if faced with this issue, would extend § 402A's coverage to innocent bystanders." 438 F.Supp. at 63. I agree with that prediction. Of course, the bystander still must show that his injuries were proximately caused by the allegedly defective product. *Id.; see Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 93–94, 337 A.2d 893 (1975).

■ It is the purported absence of proximate causation which forms the basis for Welland's motion to dismiss the strict liability claims set forth here. Under Pennsylvania law, the seller or manufacturer is a virtual guarantor of his product's safety; once a defect is shown, "the actor is responsible for all the unforeseen consequences thereof no matter how remote, which follow in a natural sequence of events." 462 Pa. at 97, 337 A.2d 893 (cita-

---

**4.** Section 402A provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

tion omitted). This is not a case in which the court properly can rule that, as a matter of law, proximate cause is lacking. The court's analysis of the causation question in connection with the plaintiffs' negligence claims, *see supra*, is equally applicable in connection with their strict liability claims. Whether the plaintiffs' theory is that the chemicals were negligently transported or, as is alleged under the strict liability counts, that "Welland sold [its] product in a defective condition unreasonably dangerous in that it was not properly packaged," the court simply cannot hold on this record that Welland's alleged conduct on the product's alleged defect was not a substantial factor in causing the plaintiffs' injuries.

■ Regarding the question of superceding cause, Welland contends that "it has been held that in a products liability suit brought under Section 402A, the actions of a third party can relieve the manufacturer of liability if the conduct is so extraordinary as not to have been reasonably foreseeable." Brief in Support of Welland's Motion to Dismiss at 38 (citing *Eshbach v. W.T. Grant's & Co.*, 481 F.2d 940, 945 (3d Cir.1973)). Under this formulation of the superceding cause concept, however, it is imperative that the question of reasonable foreseeability "be determined by following retrospectively the sequence of events and looking back from the harm to the negligent act rather than by considering whether the defendant should prospectively have envisaged the events which unfolded and caused the accident." 481 F.2d at 945 (quoting *Wilson v. American Chain and Cable Co.*, 364 F.2d 558, 562 (3d Cir.1966)); *see also Baker v. Outboard Marine Corp.*, 595 F.2d 176, 183–84 (3d Cir. 1979). It appears, then, that Welland can be found not liable if Orrach's conduct constituted "highly extraordinary negligence" which, "viewing the matter with the wisdom of hindsight," could not have been anticipated. *Holloway v. J.B. Systems, Ltd.*, 609 F.2d 1069, 1074 (3d Cir.1979). The court cannot state that, *as a matter of law*, Orrach's conduct was highly extraordinary and could not have been anticipated by one with the wisdom of hindsight. Ac-cordingly, Welland's argument will be rejected.

## THE FIREMAN'S RULE

Finally, Welland urges the court to apply the so-called "Fireman's Rule" under which the plaintiffs would be denied recovery as a matter of law. To support the invocation of such a rule, Welland asserts:

Recognizing the strong public policy considerations against allowing plaintiffs such as these to recover, courts in Pennsylvania and other jurisdictions have determined that a person whose ordinary negligence causes a fireman or police officer to be present at the scene of an emergency is not liable to the fireman/police officer injured in the course of his duties. These cases have stated that the tortfeasor owes *no duty* to the fireman/police officer. This is known as "The Fireman's Rule."

Defendant Welland Chemical, Ltd's Reply Brief at 9, Document 24 of the Record (emphasis in original).

■ Inasmuch as this court sits as a Pennsylvania court in diversity cases, the question to be decided is whether the Fireman's Rule is applicable in Pennsylvania and, if so, whether it would be applied by a Pennsylvania court under the facts of this case. In undertaking this task, the court is not free to "follow [its] own inclinations," *see Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918 (3d Cir.1982), but rather must work within the confines of Pennsylvania common law. *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894 at 897 (3d Cir.1983). When the state's highest court has addressed the issue involved, it is easy to apply the law, for the best authority on the subject has spoken. *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.) *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). When a state's Supreme Court has not yet confronted the problem, the federal court is faced with a more difficult task. In such cases, the federal court must attempt to divine the manner in which the state's high-

est forum would decide were it faced with the same question. "Although some have characterized this assignment as speculative or crystal-ball gazing, nonetheless it is a task which we may not decline." *Id.* at 661–62.

In the instant case, the court is faced with a question not yet addressed by the Supreme Court of Pennsylvania. *See generally Walsh v. Sun Oil Co.*, 437 Pa. 80, 89 & n. 3, 262 A.2d 128 (1970) (Roberts, J., concurring and dissenting). Although the Commonwealth's highest court has permitted firemen to recover in the past, *see, e.g., Ruhl v. Philadelphia*, 346 Pa. 214, 29 A.2d 784 (1943); *Drake v. Fenton*, 237 Pa. 8, 85 A. 14 (1912), it evidently has not been asked to adopt the particular rule which Welland urges here.

Welland has cited two cases decided by Pennsylvania trial courts which purportedly support the application of the Fireman's Rule. One of these cases, however, *see Bennett v. Kurland*, 21 Pa. D.&C. 2d 587 (1959), would support only a defense predicated upon the assumption of risk doctrine. In the other case cited by Welland, *see Suttie v. Sun Oil Co.*, 15 Pa. D.&C. 3 (1931), the court held:

> Not only does the doctrine of assumption of risk defeat the plaintiff's right in this case, but weighty considerations of public policy prevent the extension of liability by an owner [of premises] to firemen engaged in an attempt to extinguish fires.

*Id.* at 6.

It appears then, that the *Suttie* decision, albeit through an alternative holding, would constitute some support for the application of the Fireman's Rule within the Commonwealth of Pennsylvania. Nevertheless, inasmuch as the *Suttie* case was decided by a trial court, it is not controlling here, for this court's task is to forecast the way in which the Supreme Court of Pennsylvania would decide the question. "To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide." *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1981).

■ A primary rationale espoused in *Suttie* and most other cases invoking the Fireman's Rule centers upon the concept of assumption of risk. Specifically, it is felt that the risks involved in extinguishing a fire are so well known that a fireman must be taken to have assumed them in undertaking his task. *See, e.g., id.* at 612; *see also Berko v. Freda*, 93 N.J. 81, 459 A.2d 663, 665 (1983) (extending rule to policemen); *Walters v. Sloan*, 20 Cal.3d 199, 142 Cal.Rptr. 152, 571 P.2d 609, 611 (1977) (same). To the extent that the Fireman's Rule stands for the position that firemen assume the risk of any and all injuries that may befall them while they are on duty, *but see Berko v. Freda*, 459 A.2d at 665 (holding that the rule extends only to negligence which brings firemen to scene), it cannot apply in Pennsylvania. This conclusion follows from the holding of the Pennsylvania Supreme Court in *Ruhl v. Philadelphia*, 346 Pa. 214, 29 A.2d 784 (1943). In *Ruhl*, the court, quoting the court below with approval, stated:

> "It is what a fireman is doing at the time he is hurt that matters, not the mere fact that he is a fireman. . . . It is one thing to say that a fireman who has gone into a danger zone must take what he gets, and quite another to say that a person who stops short of the danger zone cannot recover because he is a fireman."

*Id.* at 220–21, 29 A.2d 784 (citations omitted).

The fireman involved in *Ruhl* was killed in a gas explosion after being called to a fire. The Pennsylvania Supreme Court rejected the assumption of risk defense, concluding that it could not be said as a matter of law that this particular fireman "assumed the risk of a gas explosion which resulted from the fire he officially attended." The court reasoned that "[s]uch a risk was not ordinarily incident to the discharge of his duties nor did he have any actual or constructive knowledge of it with

full appreciation of the special dangers confronting him." *Id.* at 221, 29 A.2d 784.

Whatever may be said concerning the fireman who enters a burning building, it is clear that the instant plaintiffs cannot be said to have had, *as a matter of law*, actual or constructive knowledge of a "special danger" arising from their obligation to divert traffic from the chemical spill.[5] Were the court to hold otherwise, it would also be required to hold, *as a matter of law*, that all policemen who direct traffic assume the risk of injury, that construction workers diverting traffic from a work site assume the risk of injury and, perhaps, that any motorist who attempts to divert traffic from his disabled car assumes the risk of injury. The court is not prepared to make these generalizations, and under *Ruhl*, could not confine such a generalization to firemen. *See* 346 Pa. at 220, 29 A.2d 784 ("It is what a fireman is doing at the time he is hurt that matters, not the mere fact that he is a fireman."). Hence, to the extent that the Fireman's Rule is relied upon to support a per se rule of exclusion from recovery on the ground that firemen assume the risk of their on-duty injuries as a matter of law, it must be rejected.

Welland argues, however, that the strongest rationale supporting the Fireman's Rule springs from concerns of public policy. There are cases which support this position. For instance, one court has observed that "it is the fireman's business to deal with that very hazard and hence, ... he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid." *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129, 130–31 (1960). It also has been suggested that firemen are adequately compensated for assuming risks of injury and that it is somewhat unfair for a tax-

payer to be forced to compensate a fireman for his injuries after having contributed to his salary by paying taxes. The Supreme Court of New Jersey has explained:

> [T]he taxpayer who pays the fire and police departments to confront the risks occasioned by his own future acts of negligence does not expect to pay again when the officer is injured while exposed to those risks. Otherwise individual citizens would compensate police officers twice: once for risking injury; once for sustaining it.

*Berko v. Freda*, 459 A.2d at 666. To this consideration, the California Supreme Court adds that firemen are provided special medical, retirement, disability and death benefits. *Walters v. Sloan*, 571 P.2d at 612–13.

Both the *Berko* and *Walters* cases, which extended the Fireman's Rule to preclude policemen from recovering for their injuries, were accompanied by vigorous dissenting opinions in which the respective justices argued persuasively that the rule simply does not represent sound policy. In the present case, this court is not required to decide whether the Pennsylvania Supreme Court would adopt the reasoning of either position, for much of what was said in the *Berko* and *Walters* opinions depends upon the situation of paid firemen. It is significant that the present case involves volunteer firemen. Accordingly, this court is not faced with the task of deciding whether paid firemen within this Commonwealth are adequately compensated to "assume" the risk of the negligence of a given municipality's citizens. Whatever the merit of precluding paid firemen from recovering for their injuries, the court finds it significant that in this case, the plaintiffs allege that they were volunteer firemen receiving no compensation. While Welland argues that this should make no difference, the leading cases cited in its brief appear to treat the fact of compensation as a decisive

---

5. Welland, of course, will have the opportunity at trial to introduce evidence concerning the defense of assumption of risk if it so desires. It is sufficient here to note that the present case involves a different situation than that presented when a fireman seeks to recover for injuries suffered as a result of his having entered a burning building.

factor.[6] The court notes that volunteer firemen within this Commonwealth may very well receive at least some form of disability benefits when injured in the line of duty. Welland, however, has made no showing here that this is, in fact, the case. Moreover, if volunteer firemen receive some benefits, the court would require some further showing that such benefits are provided through public funds and that they amount to adequate compensation before holding that volunteer firemen are, as a matter of Pennsylvania public policy, foreclosed from obtaining judicial relief for their injuries. As there has been no showing that such is the case, the court will deny Welland's motion to dismiss on the ground that a "Fireman's Rule" bars the instant claims.

## CLAIMS FOR EMOTIONAL DISTRESS

The wives of the plaintiff-firemen have asserted claims for severe emotional shock arising out of the injuries suffered by their husbands. Welland urges the court to dismiss these claims on the ground that they do not state a valid cause of action under Pennsylvania law. To support its view, Welland emphasizes that the plaintiff-wives were neither within the zone of danger posed by the chemical spill nor within the vicinity of the accident involving the plaintiff-firemen. Welland argues that since the wives did not even witness the accident involving their husbands, there is no right of recovery for emotional distress under Pennsylvania law.

In *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979), the Supreme Court of Pennsylvania considered "the vexing and complex question of when a plaintiff should be allowed to recover damages for negligently caused mental trauma." *Id.* at 149, 404 A.2d 672. A majority of the court concluded that a plaintiff who is outside the zone of danger posed by the defendant's conduct may recover for mental distress which results from personally and contemporaneously observing an accident involving a close relative. *Id.* Notably, however, none of the opinions rendered in *Sinn* attained the endorsement of a majority of the court. Justice Manderino concurred in an opinion authored by Justice Nix, Chief Justice Eagen filed a concurring opinion, Justice Larsen concurred in result only, and Justice Roberts authored a dissenting opinion in which Justice O'Brien joined.

Inasmuch as no clear majority emerged in *Sinn*, the views set forth in the three opinions delivered in that case are not controlling. *E.g., Mt. Lebanon v. County Board of Elections*, 470 Pa. 317, 368 A.2d 648 (1977); *accord, Greiner v. Volkswagenwerk Aktiengesellschaft*, 540 F.2d 85, 91 (3d Cir.1976) (plurality opinions represent only "an expression of the views of a minority of the court"). The views expressed by the justices in *Sinn* "are simply data that this court must consider in ascertaining the law of Pennsylvania." *Vargus v. Pitman Mfg. Co.*, 675 F.2d 73, 76 (3d Cir.1982).

It appears that *Sinn* has been interpreted in some quarters as allowing recovery for emotional distress only if the plaintiff has also averred the existence of some physical manifestation of injury. *Plummer v. Abbott Laboratories*, 568 F.Supp. 920, 926 (D.R.I.1983) (noting that this is the majority rule); *see Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 129 & n. 1, 437 A.2d 1236 (1981). This view seems to comport most closely with the position espoused by Chief Justice Eagen in his con-

---

**6.** Welland cites the Nebraska Supreme Court's decision in *Buchanan v. Prickett & Son, Inc.*, 203 Neb. 684, 279 N.W.2d 855 (1979), for the proposition that it is "immaterial" whether a fireman is compensated or acts as a volunteer. *See* Defendant Welland Chemical, Ltd's Reply Brief at 13, Document 24 of the Record. While the *Buchanan* Court did not regard the distinction as important, this is because the case was decided pursuant to assumption of risk principles and not the public policy considerations found significant in *Berko, Walters* and other cases. Since the *Buchanan* Court did not discuss these policy concerns, which, after all, arise from the fact of compensation, its observation that compensation is immaterial must be confined to the assumption of risk analysis. Hence, the court does not regard *Buchanan* as persuasive authority for the point advanced here.

834

curring opinion in *Sinn*. *See* 486 Pa. at 174, 404 A.2d 672 (Eagen, C.J., concurring specially to set forth, *inter alia*, his view that recovery should be permitted if the plaintiff can point to a physical injury or a "severe physical manifestation" of the emotional distress).

Although the plaintiff-wives have not alleged that any physical manifestations have resulted from their purported emotional distress, the court will not rely upon this factor alone in granting Welland's motion to dismiss these claims, for Pennsylvania law is less than clear on this point. A more persuasive reason for dismissing the instant claim arises from the court's obligation to "be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudications by the state courts." *Becker v. Interstate Properties*, 569 F.2d 1203, 1206 (3d Cir.1977) (footnote omitted), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). Leaving aside for the moment the question whether the "physical manifestation rule" applies in Pennsylvania, there seems to have been sufficient agreement among the justices in *Sinn* to lead courts in subsequent cases to conclude that the test originally set forth in *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) is applicable within this Commonwealth. *See, e.g., Amader v. Johns-Manville Corp.*, 514 F.Supp. 1031 (E.D.Pa.1981); *Bliss v. Allentown Public Library*, 497 F.Supp. 487 (E.D.Pa.1980). In *Dillon*, the Supreme Court of California set forth a test geared toward the traditional concept of foreseeability. This standard for determining the degree to which a bystander's emotional injury can be deemed foreseeable was phrased as follows:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plain-

tiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

68 Cal.2d at 740–41, 69 Cal.Rptr. 72, 441 P.2d 912.

The overwhelming weight of authority supports the proposition that a plaintiff-bystander who wishes to recover for psychic harm in a jurisdiction endorsing the *Dillon* test must plead and prove that he witnessed the incident giving rise to the harm. *See, e.g., Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1032 (10th Cir.1978) (applying Utah law); *Saunders v. Air Florida, Inc.*, 558 F.Supp. 1233, 1236–37 (D.D.C.1982) (applying California law). Soon after *Sinn* was decided, the Commonwealth Court of Pennsylvania opined that "[a]ll three opinions [in *Sinn*] expressed the view that the law in Pennsylvania requires the personal observation of the event." *Hoffner v. Hodge*, 47 Pa.Cmwlth. 277, 407 A.2d 940, 942 (1979). Some courts have softened the rule somewhat by allowing those who technically are not eyewitnesses to recover in certain instances. Nevertheless, these courts express the view that the plaintiff must have had some form of "experiential perception" of the relevant event. *Haught v. Maceluch*, 681 F.2d 291, 300 (5th Cir.1982) (quoting *Landreth v. Reed*, 570 S.W.2d 486, 490 (Tex. Civ.App.1978)); *see Bliss v. Allentown Public Library*, 497 F.Supp. at 488–89. In *Bliss*, for example, Judge Troutman of the Eastern District of Pennsylvania, applying the *Dillon* test as endorsed by the *Sinn* court, allowed a mother to recover for the emotional harm arising from an accident in which a heavy metal statue fell on her daughter. Analyzing the problem posed by the fact that the mother did not actually *see* the statue fall, Judge Troutman reasoned:

Plaintiffs enjoy a parent-child relationship, and the mother stood only twenty-five feet or so from the accident site. Additionally, the mother heard the crashing sound of the falling statue and looked up immediately to witness the

statue lying upon her bleeding daughter. Under these circumstances direct visual observation of the accident need not be pleaded to withstand a motion to dismiss. By pleading that the mother observed her child immediately prior to the accident and that she heard the statue fall upon her child and immediately witnessed the accident scene the mother has identified herself sufficiently as a "percipient witness" to state a cause of action for negligent infliction of emotional harm within the meaning of *Sinn v. Burd.* 497 F.Supp. at 488–89 (footnotes and citation omitted); *see also Amader v. Johns-Manville Corp.*, 514 F.Supp. at 1032–33 (Troutman, J.) (explaining further the *Bliss* holding).

In the present case, there is no allegation that the plaintiff-wives were at the scene of their husbands' injuries at the time of the accident. There is no assertion that they were anywhere near the site of the chemical spill. There is no claim that they arrived immediately after their husbands were injured. Nothing in their pleadings indicates that the alleged shock suffered by the plaintiff-wives "resulted from a direct emotional impact ... from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence." *Dillon v. Legg*, 68 Cal.2d at 740–41, 69 Cal.Rptr. 72, 441 P.2d 912. In short, there is nothing in the complaints submitted in the respective actions which would permit the court to infer that the plaintiff-wives were "percipient witnesses" to the alleged torts committed against their husbands.

The plaintiffs argue that the Pennsylvania Supreme Court's decision in *Yandrich v. Radic*, 495 Pa. 243, 433 A.2d 459 (1981) lends some support to their position. The *Yandrich* case involved a claim for negligent infliction of emotional harm filed on behalf of the estate of a father whose son was fatally struck by an automobile. The father, who neither saw, nor was in the vicinity of the accident, became despondent after the death and ultimately committed suicide. *Id.* at 245, 433 A.2d 459. The trial court dismissed the complaint for failure to state a claim, the Superior Court affirmed, and the plaintiff appealed to the Supreme Court. Because the Supreme Court was evenly divided, the order of the Superior Court was affirmed. Nevertheless, the instant plaintiffs argue that the views of three justices, Justices Larsen, Flaherty and Kauffman, who urged reversal in *Yandrich*, should be adopted here.

In an opinion authored by Justice Flaherty, the three justices posited that there is no logical reason "to hinge recovery for emotional distress to a parent on the parent's having witnessed the injury to his child." *Id.* at 253, 433 A.2d 459. Citing the fundamental principle of the common law that one is entitled to redress upon having suffered a substantial wrong, Justice Flaherty reasoned that the severe emotional distress attendant upon the loss of a loved one at the hands of a negligent tortfeasor is a substantial wrong regardless of the way in which one learns of the loss. Since a jury can decide the question whether a wrong has been committed and whether it has been caused by the defendant's negligence, Justice Flaherty could "discern no reason, either in justice or public policy, why the liability of the tortfeasor should not be extended to cover such a wrong." *Id.*

In urging the court to permit the instant claims to proceed, the plaintiffs assert that Justice Flaherty's opinion "is a logical and necessary extrapolation" of the Supreme Court's opinion in *Sinn v. Burd.* This position is untenable. It is obvious that the adoption of Justice Flaherty's opinion by the full court would represent a significant departure from prior law. Inasmuch as the *Yandrich* Court was evenly divided on the point, it is equally apparent that the Pennsylvania Supreme Court has not yet chosen to take this step. Indeed, the court notes that two other opinions were written in *Yandrich*, both setting forth persuasive arguments as to why the law should not develop in the manner urged by Justice Flaherty.

It would be manifestly inappropriate for a federal court, regardless of personal views on the issue, to enter the fray under these circumstances, notwithstanding its duty in diversity cases to attempt to "predict" the future course of the law of the state in which it sits. The court borrows the comments made by Judge Aldisert of our Court of Appeals when faced with a similar situation:

> Like many other plaintiffs in diversity cases filed in federal courts, the [plaintiff] here is asking that we anticipate the birth of a state law doctrine in the "womb of time, but whose birth is distant." We have been asked to deliver prematurely a new doctrine of Pennsylvania tort law, and as a federal court we are unwilling to do so.

*Vargus v. Pitman Mfg. Co.,* 675 F.2d at 76 (footnote omitted) (quoting *Spector Motor Service, Inc. v. Walsh,* 139 F.2d 809, 823 (2d Cir.) (L. Hand, J., dissenting), *vacated and remanded,* 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944)). Accordingly, the claims of the plaintiff-wives for negligent infliction of emotional harm will be dismissed.

## CONCLUSION

The court will grant Welland's motion to dismiss to the extent that it applies to the absolute immunity counts and to the claims of the plaintiff-wives concerning the alleged negligent infliction of emotional distress. The court will deny the motion in all other respects.[7]

An appropriate Order will enter.

---

**7.** On January 27, 1984, the plaintiffs filed amended complaints in their respective actions. In these amended pleadings, the plaintiffs assert that Welland is vicariously liable for the alleged negligence of the driver of the truck bearing Welland's product. Welland filed a motion to dismiss on February 7, 1984, relying upon the briefs previously filed. The plaintiffs responded to the motion on February 17, 1984. The plaintiffs state that they "agree that the Amended Complaint does not change the issues" presented here. To the extent that the parties are in agreement on this point, then, the instant Memorandum applies to the proffered amendment as well.