**David PRICE**

v.

**TEMPO, INC. and ALB, Inc.**

v.

**GOODALL RUBBER COMPANY and Fire Chem, Inc., et al.**

**Civ. A. No. 83–0006.**

United States District Court, E.D. Pennsylvania.

March 18, 1985.

J. Michael Farrell, Philadelphia, Pa., for plaintiff.

John P. Penders, Philadelphia, Pa., for Tempo, Inc.

Walter J. Timby, Jr., Philadelphia, Pa., for Alb, Inc.

G. Wayne Renneisen, Philadelphia, Pa., for Goodall Rubber Company.

Alan Belfus, Philadelphia, Pa., for Fire Chem, Inc.

## OPINION

LUONGO, Chief Judge.

This action has been brought by plaintiff David Price for injuries which he sustained while performing his duties as a firefighter with the Philadelphia Fire Department. Plaintiff alleges that he was injured because of defects in his firefighting gloves and coat, manufactured respectively by defendants Tempo, Inc. and Alb, Inc. Currently before me are defendants' motions for summary judgment under Fed.R.Civ.P. 56.

On January 13, 1981, plaintiff, then an eleven-year veteran of the Philadelphia Fire Department, was called to a residential fire. When he arrived at the scene he was informed that persons might be trapped inside the burning building. In accordance with his duties as "Scott Pak man,"[1] plaintiff entered the building to search for possible victims of the fire. He found no one inside the building. As he was moving on his hands and knees toward the exit, a flash of fire rolled across the ceiling eight to ten feet above him, producing intense heat and smoke. Before he could be rescued by his colleagues, he had sustained second and third degree burns on his face, neck, shoulders, hands and inner thighs.

Plaintiff alleges that he was injured because his gloves, manufactured by defendant Tempo, and his coat, manufactured by defendant Alb, failed to give him adequate protection. According to Dr. Charles Beroes, a professor of chemical engineering whom plaintiff engaged to test the fire-resistant qualities of the gloves and coat, the products were defectively designed and unreasonably dangerous for their intended and foreseeable uses in firefighting. Dr. Beroes stated that if the gloves had been constructed with a vapor barrier and wool

lining they would have prevented the burns to plaintiff's hands. The coat, according to Dr. Beroes, was unreasonably dangerous because of the material used for its inner lining. The inner lining was composed of a polyester material which burns rapidly and intensely, producing a hot, tarry, molten substance. Dr. Beroes opined that when plaintiff was exposed to the flash of fire the inner lining of his coat began to melt and adhere to his skin, causing the burns to the parts of plaintiff's body covered by the coat. Dr. Beroes concluded that plaintiff's injuries could have been prevented had the coat been lined with flame retardant cotton or wool, both readily available substitutes for the material used. Plaintiff also alleges in his complaint that defendants misrepresented the protective capabilities of their products and breached express and implied warranties of fitness.

Defendants have moved for summary judgment. First, they contend that the "government contract defense" insulates them from liability because their products conformed to specifications established by the City of Philadelphia. Second, they invoke the "fireman's rule," claiming that plaintiff, while performing his duties as a fireman, assumed the risk of fire-related injury.

### I. *The Government Contract Defense*

The government contract defense "shields a manufacturer from liability if the product causing the injury complied strictly with government contract specifications concerning design." *Koutsoubos v. Boeing Vertol,* 553 F.Supp. 340, 342 (E.D. Pa.1982), *aff'd,* 755 F.2d 352 (3d Cir.1985). Although the Pennsylvania courts have never decided whether the government contract defense should be available in a strict products liability or breach of warranty action,[2] the Court of Appeals for the Third

---

1. A Scott Air Pak is a self-contained breathing apparatus, consisting of a tank, mask and regulator, which is strapped to a firefighter's back. The firefighter assigned to wear the Scott Pak is responsible to search for and rescue possible victims inside a burning building. Deposition of Plaintiff David Price at 58–59.

2. The Pennsylvania Supreme Court first accepted the government contract defense in *Ference v. Booth & Flinn Co.,* 370 Pa. 400, 88 A.2d 413 (1952), refusing to hold a government contractor liable for property damage caused while the contractor was building a highway according to government specifications. Later state court

Circuit has predicted that Pennsylvania would extend the defense to such actions. *Brown v. Caterpillar Tractor Co.*, 696 F.2d 246 (3d Cir.1982). The Third Circuit indicated, however, that courts should be cautious in permitting reliance upon the defense. The court was particularly concerned with the scenario, not present in *Brown* itself, "in which the [government] specifications are skeletal, the contract is negotiated, and the contractor, knowing of a high risk of serious harm, fails to install a relatively inexpensive safety device." *Id.* at 254 n. 17. To deal with such cases, the Third Circuit has recently adopted the approach first announced by Judge Pratt in *In re "Agent Orange" Product Liability Litigation*, 534 F.Supp. 1046 (E.D.N.Y. 1982). *Koutsoubos v. Boeing Vertol*, 755 F.2d 352, 355 (3d Cir.1985). *Accord In re Air Crash Disaster at Mannheim, Germany*, 586 F.Supp. 711, 717 (E.D.Pa.1984); *Hubbs v. United Technologies*, 574 F.Supp. 96, 98 (E.D.Pa.1983). According to Judge Pratt:

> A supplier should not be insulated from liability for damages that would never

have occurred if the military had been apprised of hazards known to the supplier. A supplier, therefore, has a duty to inform the military of known risks attendant to a particular weapon that it supplies, so as to provide the military with at least an opportunity fairly to balance the weapon's risks and benefits.... [T]he court ... concludes that a defendant in this case will be entitled to judgment dismissing all claims against it based on that defendant's having supplied "Agent Orange" to the government pursuant to a contract, if the defendant proves:

1. That the government established the specifications for "Agent Orange";

2. That the "Agent Orange" manufactured by the defendant met the government's specifications in all material respects; and

3. That the government knew as much as or more than the defendant about the hazards to people that accompanied use of "Agent Orange".

*Id.* at 1055, *quoted in part in Brown*, 696 F.2d at 254 n. 17.[3]

---

cases have arisen only in the context of government construction projects. *See Lobozzo v. Adam Eidemiller, Inc.*, 437 Pa. 360, 263 A.2d 432 (1970); *Valley Forge Gardens, Inc. v. James D. Morrissey, Inc.*, 385 Pa. 477, 123 A.2d 888 (1956).

**3.** *Agent Orange, Brown, Koutsoubos* and the cases in the Eastern District of Pennsylvania involved contracts for the manufacture of military equipment. The Third Circuit has specifically reserved judgment as to what form the government contract defense might take in a non-military context. *Koutsoubos*, at 355. Some courts have indicated that the defense might be appropriate only "with respect to products specifically designed by the government for a unique military use." *In re All Maine Asbestos Litigation*, 575 F.Supp. 1375, 1378 (D.Me.1983). *Accord McKay v. Rockwell Int'l Corp.*, 704 F.2d 444, 451 (9th Cir.1983). Courts holding the defense available in the military context have expressed a number of concerns. First, to impose liability upon military contractors could subvert the *Feres-Stencel* doctrine, which immunizes the United States from liability to servicemen injured by defective military products. *See Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977); *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Second, the military tends to have more expertise than other government

entities concerning necessary equipment. In addition, military contractors are more likely than other government contractors to be under compulsion with respect to product specifications. It would be unfair to hold a contractor liable for defects in a product which the government forced him to make. Finally, courts seek to avoid interference with military decisionmaking. *See Koutsoubos*, at 354–355; *McKay*, 704 F.2d at 449–51; *Johnston v. United States*, 568 F.Supp. 351, 356–58 (D.Kan.1983).

Arguably, these justifications for the government contract defense effectively distinguish contracts for military equipment from other government contracts. I am not persuaded, however, that I should thus hold that a contractor who manufactures products for a government entity other than the military can never invoke the government contract defense. *Brown* did not limit its holding to contracts for military equipment, and the court's reasoning is apposite outside the military context. First, the *Brown* court expressly noted that the government contract defense in Pennsylvania is distinct from the issue of sovereign immunity. Thus, the fact that the government may not be immune from liability in certain non-military contexts does not foreclose recourse to the government contract defense. *Brown*, 696 F.2d at 251. Second, the *Agent Orange* test specifical-

Defendants Tempo and Alb argue that the government contract defense protects them because they manufactured the firefighting gloves and coat in accordance with specifications provided by the City of Philadelphia. Appended to Tempo's memorandum in support of its motion for summary judgment is a copy of the city's purchase order for Tempo gloves. The purchase order sets forth "General Specifications" relating to materials, construction, size and stitching. The affidavit of Melvin Cohen, Tempo's president, asserts that he personally examined the gloves which plaintiff was wearing when he was injured, and that those gloves complied in every respect with the city's specifications as described in the purchase order.[4] Tempo alleges in its memorandum that it never represented to the fire department that the gloves would protect firefighters from every conceivable fire-related injury, and that the fire department never expected absolute protection. Tempo relies upon the deposition of Captain James L. Brown of the Philadelphia Fire Department to establish that the fire department chose Tempo gloves on the basis of its own field tests, not on the basis of representations made by Tempo. Tempo also cites plaintiff's deposition, in which plaintiff stated that he had never received any information or representations from Tempo concerning the gloves.

Defendant Alb also contends that the design of the firefighting coat was established by the city. Attached to its memorandum is a document entitled "Philadelphia Fire Department Running Coat with Detachable Liner Specifications." This document specifies the materials, construction and labelling of both the coat and its inner lining. According to the affidavit of Albert L. Bartolucci, Jr., Alb's president, Alb received these specifications from the city. Alb manufactured the coats in strict accordance with the city's design, with the exception that the coats had raglan sleeves rather than the specified set-in sleeves. The affidavit states that Alb never supplied the city with any specifications and that the city's specifications did not incorporate Alb's design for firefighting coats. Alb further claims it never warranted that the coat would provide absolute protection, and in fact it specifically warned the city that the coat was not a proximity or fire entry suit and should not be in direct contact with flames. Pursuant to the city's specifications, a warning label to that effect was sewn inside each coat.

Plaintiff, in his memorandum opposing defendants' motions for summary judgment, recognizes that Captain Brown recommended defendants' products on the basis of his own experience, department field tests, and general product literature. Captain Brown has asserted by affidavit, however, that the city, pursuant to his recommendation, adopted Tempo's glove specifications and incorporated those specifications in its invoice. According to plaintiff, Captain Brown's deposition testimony shows that the city also adopted Alb's coat

ly requires a government contractor to prove it did not have more knowledge concerning possible product defects than the government. *Agent Orange,* 534 F.Supp. at 1055. If it is true that military contractors have less discretion and knowledge relative to the government than their non-military counterparts, the latter will find it more difficult to invoke the defense. Fairness in individual cases should thus be achieved without the necessity of abrogating the defense. Third, although the fact that there is no danger of interfering with military decisions may support a decision not to shield a contractor from liability in an individual case, it does not justify a blanket refusal to consider the government contract defense outside of a military context.

Although the arguments outlined above do not persuade me that the government contract defense should never be available in non-military products liability cases, they do reinforce my conclusion that summary judgment is inappropriate as to most of the issues in this case. My conclusion is further reinforced by the reluctance of courts in this circuit and district to grant summary judgment even to a military contractor on the basis of the government contract defense. *Koutsoubos,* at 355; *Brown,* 696 F.2d at 247; *Hubbs,* 574 F.Supp. at 100. *See also In re Air Crash Disaster,* 586 F.Supp. at 715 (refusing to grant defendant's motion for a judgment n.o.v.).

4. In response to Dr. Beroes' contention that the gloves should have had a wool liner, Mr. Cohen asserts that city specifications required and plaintiff's gloves in fact had such a liner.

specifications rather than develop its own. Plaintiff argues that if the manufacturers had changed the product designs the city's specifications would have changed accordingly. The city would therefore have accepted gloves with a vapor barrier or a coat with a less.flammable inner lining had the manufacturers.disclosed the need for such safety features. Plaintiff claims that the city ultimately relied upon the manufacturers' expertise in assuming that the products were reasonably safe as designed. Plaintiff further contends that his deposition and the testimony of Captain Brown demonstrate that the manufacturers did not fully disclose the dangers associated with the use of their products. Thus, according to plaintiff, the government contract defense should not insulate the manufacturers from liability for their defectively designed products.

■ The government contract defense is an affirmative defense, and defendants bear the burden of showing that its elements are satisfied. *Hubbs v. United Technologies,* 574 F.Supp. 96, 98 (E.D.Pa.1983); *Koutsoubos v. Boeing Vertol,* 553 F.Supp. 340, 343 (E.D.Pa.1982), *aff'd,* 755 F.2d 352, (3d Cir.1985). Moreover, in a motion for summary judgment, the moving parties must demonstrate that there is "no genuine issue as to any material fact" and that they are "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).[5] Defendant Tempo has not discharged its burden with respect to any of the elements of the government contract defense, and defendant Alb has not satisfied the third element.

As to the first element of the defense, Tempo has not clearly established that the specifications for its product originated with the government. In *In re Air Crash Disaster at Mannheim, Germany,* 586 F.Supp. 711, 717 (E.D.Pa.1984), Judge Weiner held that the government contract defense is inapplicable where the government merely approves a manufacturer's de-

sign as opposed to actually establishing specifications. Judge Weiner acknowledged the Third Circuit's refusal in *Brown* to require that a contractor prove it was compelled to follow precise government specifications. He relied, however, upon the *Brown* court's indication that it would not permit a contractor to invoke the defense when the government set only general performance standards, leaving the details to the contractor. *Id.* at 716 (citing *Brown,* 696 F.2d at 254 n. 17). *See also Agent Orange,* 534 F.Supp. at 1056.

■ I agree with Judge Weiner's holding that a manufacturer should not be protected by the government contract defense unless the government played a significant role in establishing the allegedly defective design. *See Koutsoubos,* at 355. With respect to the design of the firefighting gloves, the extent of the government's role is open to dispute. Captain Brown's affidavit states that the city adopted Tempo's specifications pursuant to his recommendation.. Plaintiff is entitled to present evidence at trial that Tempo, not the government, was primarily responsible for the allegedly defective design of the gloves. If Tempo does succeed in establishing the first element of the government contract defense by proving that the government provided the specifications for the gloves, plaintiff may still present evidence that Tempo gloves did not conform to the government's specifications.

Defendant Alb, unlike Tempo, has established that there are no issues of material fact as to the first and second elements of the *Agent Orange* test. Alb's president has submitted an affidavit stating that Alb had originally contracted with Goodall Rubber Company to manufacture coats for the Philadelphia Fire Department. Alb received specifications from the city, either directly or through Goodall, and manufactured the coats in substantial conformity

---

**5.** In considering a motion for summary judgment, a court must construe all facts and inferences drawn from the evidence in favor of the party opposing the motion, and summary judgment "may not be granted if there is 'the slight-

est doubt' about material facts." *Brown v. Caterpillar Tractor. Co.,* 696 F.2d 246, 255 n. 19 (3d Cir.1982) (quoting *Tomalewski v. State Farm Life Insurance Co.,* 494 F.2d 882, 884 (3d Cir. 1974)).

with those specifications. The affidavit states that Alb played no role in establishing the specifications.

The facts alleged in this affidavit, if true, establish sufficient government participation to satisfy the first two elements of the government contract defense. *See Koutsoubos,* at 355. According to the Court of Appeals for the Third Circuit:

> Once the moving party has supplied sufficient affidavits in support of its motion, the opposing party must respond by supplementing the record in some manner— whether by its own affidavits or otherwise—setting forth specific facts demonstrating that there is a genuinely disputed factual issue for trial.

*Fireman's Insurance Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982).

Plaintiff has submitted nothing since Alb filed the affidavit of its president. He has previously asserted that the testimony of Captain Brown raises an inference that the city adopted Alb's specifications rather than establish its own. An examination of Captain Brown's depositions demonstrates that the only possible basis for such an inference is that Brown did not clearly state how the city developed its specifications. Such speculation is an inadequate response to Alb's unequivocal affidavit.[6] Plaintiff has presented no affirmative evidence to support his contention that the city adopted Alb's specifications. Although I recognize that plaintiff is entitled to the benefit of any reasonable inference, "Rule 56(e) does not allow a party to rely merely upon bare assertions, conclusory allegations or suspicions." *Id.  Accord Walker v. Skyclimber, Inc.,* 571 F.Supp. 1176, 1179–80 (D.V.I.1983); *Goodman v. DeAzoulay,* 554 F.Supp. 1029, 1031 (E.D. Pa.1983). I will thus grant Alb's motion for summary judgment as to the first two elements of the *Agent Orange* test.  *See Koutsoubos v. Boeing Vertol,* 553 F.Supp. 340 (E.D.Pa.1982), *aff'd,* 755 F.2d 352 (3d Cir.1985) (granting partial summary judgment on the ground that two out of the three elements of the test were established).

■ Neither Tempo nor Alb has discharged its burden as to the third element of the test, under which they must prove that "the government knew as much as or more than [defendants] about the hazards" of the products.  *Koutsoubos,* at 354. Plaintiff Price has raised a genuine issue concerning whether defendants failed to disclose relevant product safety information to the city. Although defendants deny having misrepresented the protective qualities of their products either directly or by omission, it appears from Captain Brown's deposition that defendants may have possessed relevant safety information which they did not reveal to the city. Defendants themselves stress that they made only limited representations to the city concerning product safety, and that the city decided to purchase Tempo gloves and Alb coats solely on the basis of the Fire Department's independent tests. Captain Brown's deposition shows, however, that the department's tests were limited to field testing of the gloves and visual inspection of the coat. All laboratory tests were conducted by the manufacturers. Plaintiff can reasonably argue on these facts that the city, lacking comprehensive information concerning the products' safety, relied upon the manufacturers to ensure that the products were fit for their intended use. Plaintiff must be permitted to present evidence at trial that the defendants knew more than did the city concerning possible defects in their products' designs, and that they failed to disclose such information.

---

6. The statements which Captain Brown did make about the city's specification process demonstrate how speculative plaintiff's argument is. Captain Brown asserted, "I've never had any direct dealings with [Alb]. We specify a coat and it goes out on a bid process. In general, I wouldn't even know what company would get the contract. Each year it would change. It's a different type of an operation than it is with the gloves." Deposition of Captain James L. Brown at 31 (Oct. 4, 1983). As noted earlier in this opinion, Captain Brown has stated in an affidavit that the city did *not* develop specifications for firefighting gloves, but adopted the glove manufacturer's specifications.

## II. The Fireman's Rule

The fireman's rule "insulate[s] one whose negligence causes a fire from liability for injuries sustained by a firefighter while extinguishing the blaze." *Berko v. Freda*, 93 N.J. 81, 83, 459 A.2d 663, 664 (1983). Defendants' claim that the rule shields them from liability to plaintiff in this case is without merit. The fireman's rule is based upon the precept that a fireman assumes the risks normally incident to firefighting. Since negligence in starting a fire creates the occasion for firefighters to perform the duties for which they are trained and paid, courts have held as a matter of public policy that firefighters should not recover for such negligence. *Herman v. Welland Chemical, Ltd.*, 580 F.Supp. 823, 831–32 (M.D.Pa.1984). In *Herman*, the district court for the Middle District of Pennsylvania held that the Pennsylvania Supreme Court, which has not considered whether to adopt the fireman's rule, would not accept "the position that firemen assume the risk of any and all injuries that may befall them while they are on duty." *Id.* at 831. The court therefore decided that firemen who were hit by a car while directing traffic around a chemical spill had not assumed the risk of such injury and were not barred from recovery by the fireman's rule. *Id.* at 825, 832–33. Similarly, the New Jersey Supreme Court has noted that the fireman's rule "speaks only to the negligence that started the fire. Case law draws a distinction between injuries stemming from the negligence that brought the firefighters or police to the scene in the first place and injuries suffered from independent causes that may follow." *Berko*, 93 N.J. at 85, 459 A.2d at 665.

Certainly the danger that a firefighter's safety equipment may be defective is "not an inherent part of the job and is not a risk the firefighter[ ] knowingly and voluntarily assumed." *Id.* at 86, 459 A.2d at 665. In fact, plaintiff relied upon his gloves and coat to protect him from the risks inherent in firefighting. Defendants cannot transform the fireman's rule into an absolute bar to a firefighter's recovery for any injury sustained during a fire. *Herman*, 580 F.Supp. at 831–32; *Ruhl v. City of Philadelphia*, 346 Pa. 214, 221, 29 A.2d 784, 787 (1943) ("It is one thing to say that a fireman who has gone into a danger zone must take what he gets, and quite another to say that a person who stops short of the danger zone [or who, as here, takes proper safety precautions] cannot recover because he is a fireman.")

## III. Conclusion

Because defendant Alb has met its burden with respect to the first and second elements of the government contract defense, I will grant partial summary judgment in Alb's favor. Summary judgment will be denied as to the third element. Defendant Tempo has not established any of the elements of the defense, and its motion for summary judgment will be denied. Defendants' argument under the fireman's rule is without merit as a matter of law.