STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. DAVID M. MIRAULT, DEFENDANT-APPELLANT.

Argued November 23, 1982—Decided March 17, 1983.

*Matthew Astore,* Assistant Deputy Public Defender, argued the cause for appellant (*Joseph H. Rodriguez,* Public Defender, attorney).

*Katherine A. Smith,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

The central issue here is whether using force or inflicting bodily injury on a police officer investigating a burglary constitutes the assault "upon another" that elevates theft to robbery under *N.J.S.A.* 2C:15–1. We hold that it does and affirm the judgment below in that respect but modify it with respect to merger of one count of the indictment.

On February 11, 1980, a returning homeowner noticed her front door open and its molding torn off. Before entering, she called the police from a nearby store. A responding patrolman cautioned her to remain outside while he entered the home alone with his revolver drawn.

The police officer and the defendant, Mirault, soon confronted each other. Although their versions differ, it is clear that a violent struggle followed. The jury heard the officer describe how, after he shouted "freeze," the defendant leaped at him and grabbed his revolver as the two fell to the ground. The defendant claimed that he feared the officer would use the gun on him. The officer said that he deliberately discharged the gun to empty its chambers and that the defendant threatened to kill him. The struggle continued for several minutes from room to room before backup police arrived and subdued the defendant. In its course the patrolman suffered a dislocated shoulder, torn trigger finger, and abrasions. The police found stolen property on the defendant's person and in a briefcase. Defendant was indicted in this incident for burglary, *N.J.S.A.* 2C:18–2; robbery, *N.J.S.A.* 2C:15–1; attempted murder of the officer, *N.J.S.A.* 2C:5–1; and aggravated assault on the officer, *N.J.S.A.* 2C:12–1 b(1).

Defendant pleaded not guilty to all charges. At trial, the judge granted defendant's motion to dismiss the attempted murder charge before submitting the case to the jury, which rendered a guilty verdict on all remaining charges. The court vacated the jury's verdict on the count of burglary in the second

degree and substituted burglary in the third degree.[1] On these charges the court sentenced the defendant to concurrent terms of 18 years for the robbery, 4 years for the burglary, and 7 years for the aggravated assault, with a minimum term before parole eligibility of 7 years on the robbery count.[2]

In an unreported opinion, the Appellate Division affirmed. We granted certification. 91 *N.J.* 216 (1982).

I

The New Jersey Code of Criminal Justice (Code), *N.J.S.A.* 2C:1–1 to 98–4, elevates theft to robbery if a person inflicts bodily injury upon another or threatens another in the course of committing a theft, which includes the immediate flight after its commission. *N.J.S.A.* 2C:15–1 a. The robbery statute as enacted read:

a. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury upon *another;* or

(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

---

[1]Burglary, the entry of a structure with intent to commit an offense therein, is a crime of the second degree if the actor "(1) [p]urposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone; or (2) [i]s armed with or displays what appears to be explosives or a deadly weapon." *N.J.S.A.* 2C:18–2. The trial court believed the defendant "has already been sentenced on that confrontation, either on the robbery or on the aggravated assault."

[2]Defendant was tried simultaneously for burglary and theft committed in another home in the community. A consecutive term of 4 years without parole ineligibility was imposed for the companion offense of burglary, with a concurrent term of 4 years for theft. No appeal was taken from those convictions.

b. Grading. Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon. [Emphasis added].[3]

The Code represents a new and comprehensive system of criminal law. In defining robbery, as in many other instances, "the language and grading of the Code have marked a clean break with the past." *State v. Butler,* 89 *N.J.* 220, 226 (1982). The Legislature has stated its intent that the new Code "embody principles representing the best in modern statutory law . . . ." *L.*1968, *c.* 281, § 4.

Modern legislatures are seeking to protect the citizenry not just from thieves but from violent, life-threatening thieves. The drafters of the Model Penal Code (MPC), upon which our Code section is based, have so noted:

The violent petty thief operating in the streets and alleys of big cities—the "mugger"—is one of the main sources of insecurity and concern in the population at large. There is a special element of terror in this kind of depredation. The ordinary citizen does not feel particularly threatened by surreptitious larceny, embezzlement, or fraud. But there is understandable abhorrence of the robber who accosts on the streets and who menaces his victims with actual or threatened violence against which there is a general sense of helplessness. [II Model Penal Code, § 222.1, comment 1 at 98 (Rev'd Comments 1980)].

■ Both the New Jersey Code and the MPC broaden common law robbery in several ways: they include injury or threat to one other than the custodian of the property; they include escape from commission or attempt; and they eliminate the element of asportation. Our new statute thus "manifests a legislative intent to adopt a more expansive concept of robbery." *State v. Carlos,* 187 *N.J.Super.* 406 (App.Div.1982), certif. den., 93 *N.J.*

---

[3]The statute was amended by adding "or uses force" in subsection a(1) to expand liability for situations without injury such as blindside mugging or purse snatching. *L.*1981, *c.* 22 (amending *L.*1978, *c.* 95); Senate Judiciary Committee Statement, Senate No. 885.

297 (1983).[4] These statutory changes follow the developing common law.[5]

Defendant quite candidly recognizes that the trend evidenced in many new robbery statutes is to provide enhanced punishment even where the force is used against someone other than the victim of the theft. *See Ala.Code* § 13A–8–43(a)(1) (1978) ("force against ... the owner or any person present"); *Ariz. Rev.Stat.Ann.* § 13–1902 A (1978) ("force against any person"); [6]

---

[4]In *Carlos,* the presence of two threatened bystanders during theft from two other persons did not convert two thefts to four robberies. No proper charge was given on attempted theft from the bystanders. We hold here that the person threatened need not be the victim of the theft.

[5]At common law legal title was not essential, "a taking from one having the care, custody, control, management, or possession of the property being sufficient." 77 *C.J.S., Robbery,* § 7 at 452 (1952). Robbery was an offense against possession rather than ownership; the only requirement was that the goods belong to someone other than the thief. *See State v. Butler,* 27 *N.J.* 560, 590–91 (1958) (employee who took care of steam boilers at night had constructive possession); *State v. Lyons,* 70 *N.J.L.* 635, 645–46 (E. & A.1904) (night watchman had custody of factory goods); *State v. Ford,* 92 *N.J.Super.* 356, 363 (App.Div.1966) (employee had custody of cash of finance company); *State v. Bowden,* 62 *N.J.Super.* 339, 346 (App.Div.), certif. den. *sub nom. State v. Duffy,* 33 *N.J.* 385 (1960) (bank teller had custody of cash in drawer); *State v. Trunfio,* 58 *N.J.Super.* 445, 448 (App.Div.1959) (common carrier had possession of goods in transit); *State v. Cottone,* 52 *N.J.Super.* 316, 321–24 (App.Div.1958), certif. den., 28 *N.J.* 527 (1959) (maid was in charge of everything in home against anyone except the family). Even goods stolen from a thief could be the subject of robbery. *State v. Brown,* 72 *N.J.L.* 354, 356 (Sup.Ct.1905), aff'd, 73 *N.J.L.* 679 (E. & A.1906); Annot., 89 *A.L.R.*2d 1435 (1963); 4 *Wharton, Criminal Law* § 482 at 76 (14 ed. 1981). These cases indicate the broadness of the class of victims whose intimidation or assault sustains robbery.

[6]The Arizona statute has been held to mean force against any person, "not necessarily only against the person dispossessed of the property." *State v. McGuire,* 131 *Ariz.* 93, 638 *P.*2d 1339, 1342 (Ariz.Sup.Ct.1981) (citing *State v. Miguel,* 125 *Ariz.* 538, 611 *P.*2d 125 (Ariz.Ct.App.1980) (O'Connor, J.) (threats to companions and taking wallet of unconscious person sustain robbery)); *accord, State v. Johnson,* 411 *So.*2d 439 (La.Sup.Ct.1982) (robbery where thief used force against one woman in snatching friend's purse); *Lightner v. State,* 535 *S.W.*2d 176 (Tex.Cr.App.1976) (robbery where thief injured policeman outside store).

*N.Y.Penal Law* § 160.15 (McKinney 1975) ("injury to any person who is not a participant"); *Ohio Rev.Code Ann.* § 2911.02 (Page 1982), Commentary ("person against whom force is used or threatened need not be the victim of the theft itself"); 18 *Pa.Cons.Stat.Ann.* § 3701(a) (Purdon 1973) ("inflicts . . . injury upon another . . . [or] threatens another . . .").

Our pre-Code statute defined robbery as taking a person's property "by violence or putting him in fear." *N.J.S.A.* 2A:141–1. In contrast, the Code imposes liability for injury or threat to "another" before, during, and after a theft. *N.J.S.A.* 2C:15–1 a. It is manifestly broader than the prior statute. The expansion of the definition expresses the Code's intent to focus on the felon's conduct and not the victim's status. In explaining the Code's coverage of the post-theft events, the commentators noted: "The thief's willingness to use force against those who would restrain him in flight strongly suggests that he would have employed it to effect the theft had there been need for it." II New Jersey Penal Code § 2C:19–1, Commentary 2 at 214 (New Jersey Criminal Law Revision Commission, Final Report 1971) ("II NJPC").[7]

## II

However, the defendant would have us stop here and conclude that our Legislature did not intend enhanced punishment to apply where a thief uses force against an arresting police officer. He argues that although the Legislature intended to

---

[7]The Legislature amended the robbery statute in 1981, *supra* at 496 n. 3. This amendment indicates the recent intention of the Legislature to expand rather than narrow the scope of robbery. Therefore injury or threats "to another" should include persons other than the property owner.

It is important to realize that an act of thieving might endanger a range of interests other than wealth. In the traditional view, the thief upset the social order not only by threatening property; but by violating the general sense of security and well-being of the community; in this broader sense, theft was feared as a socially unnerving event. [Fletcher, "The Metamorphosis of Larceny," 89 *Harv.L.Rev.* 469, 474 (1976) (footnotes omitted) ].

protect innocent citizens of this State, neither the Legislature nor any commentator has indicated that the robbery statute also exists as a sanction against the thief who may have no propensity to assault his theft victim, but who may fight a police officer who intends to apprehend him. This Court, he argues, should not presume that the Legislature's unspoken intention was to include police officers in the class of persons protected by the statute.

■ We disagree. The commentary to the New Jersey Code makes it clear that the Code addresses the criminal who is prone to use violence. "[This] offender exhibits himself as seriously deviated from community norms, requiring more extensive incapacitation and retraining." II NJPC, *supra,* § 2C:19–1, Commentary 1 at 213.[8] We discern no legislative intention to discount assault upon police officers as though it were something to be expected, a part of the game, so to speak. The legislative concern for the safety of police is quite to the contrary. *N.J.S.A.* 2C:12–1 b(5) elevates even a simple assault upon a police officer to aggravated assault regardless of the severity of the injury.

In matters of construction we look first to the language of the statute. The statute is broadly encompassing in its use of the phrase "another." The word "another" is not a technical word. "In the absence of any explicit indication of special meaning, words of a statute are to be given their ordinary and well understood meaning." *Levin v. Parsippany-Troy Hills Tp.,* 82 *N.J.* 174, 182 (1980). "The provisions of the code shall be construed according to the fair import of their terms. . . ." *N.J.S.A.* 2C:1–2 c. As used in the statute, the term "another" is broader than "him" or some other term restricted to the actual theft victim. Including an investigating police officer in the term "another" adheres to the Code's basic approach that the degree of crime depends upon the objective use of force rather than technical concepts of custody and possession.

---

[8]Section 2C:19–1 was reenacted as § 2C:15–1 by *L.*1979, *c.* 178.

## III

Defendant further argues that the theft was complete when the police officer ordered the defendant to "freeze" and that what happened thereafter is a distinct offense unrelated to the theft. We disagree. As noted, the Code has broadened the concept of robbery. It specifically includes in the phrase "in the course of committing a theft" both the attempt before and immediate flight after the theft. "This was not the common law rule but it has been adopted by statute or by decision in most jurisdictions." II NJPC, *supra*, at 214. *Cf. State v. Zupkosky,* 127 *N.J.L.* 218, 222 (E. & A.1941) (shooting of clerk in pursuit of defendant outside store sustains felony murder based on robbery; "[h]e was not through with the crime"); *State v. Culver,* 109 *N.J.Super.* 108, 113–14 (App.Div.), certif. den., 56 *N.J.* 473 (1970) (thief's threat to use force on shopkeeper and use of force against shopkeeper's daughter during escape sustain robbery even though goods initially may have been taken without force).

In the analogous context of felony murder, the "ensues clause"[9] has been interpreted to include homicide committed during the "res gestae." *Cf. State v. Canola,* 73 *N.J.* 206, 211 (1977) (quoting dissent below by Handler, J.) (holding, however, that killing of accomplice in skirmish was not in furtherance of the undertaking). The rule applies when the initial crime and the murder are closely connected in point of time, place, and causal connection and are integral parts of one continuous transaction. *State v. Harley,* 543 *S.W.2d* 288, 293 (Mo.Ct.App. 1976). *See also* 40 *C.J.S., Homicide,* § 21 at 871 (1944).

The question in each felony murder case related to robbery is one of fact: whether the offender, before inflicting the injury that causes death, has reached a point of at least temporary

---

[9]The pre-Code statute provided that a person is guilty of murder "if the death of anyone ensues from the committing [of] or attempting to commit" certain enumerated felonies. *N.J.S.A.* 2A:113–1.

safety, *Campbell v. State,* 227 *So.*2d 873, 878 (Fla.Sup.Ct.1969), *cert.* dism., 400 *U.S.* 801, 91 *S.Ct.* 7, 27 *L.Ed.*2d 33 (1970), or become subject to "complete custody," *People v. Smith,* 232 *N.Y.* 239, 133 *N.E.* 574, 575 (N.Y.Ct.App.1921). *See also People v. Goree,* 30 *Mich.App.* 490, 186 *N.W.*2d 872, 875 (Mich.Ct.App.1971) (felons had left store and were pulled over to curb by police in pursuit); *People v. Mitchell,* 61 *Cal.*2d 353, 38 *Cal.Rptr.* 726, 392 *P.*2d 526, 531–32 (1964), *cert.* den., 384 *U.S.* 1007, 86 *S.Ct.* 1985, 16 *L.Ed.*2d 1021 (1966) (defendant claimed that he offered to surrender before a shootout that resulted in death).

Here the continuous and violent struggle took but a few minutes, never moved beyond the scene of the crime, and never found the defendant in complete custody until the backup police arrived. Under the circumstances the robbery and aggravated assault were clearly part of a continuous transaction; the assault thus took place "in the course of committing a theft." *N.J.S.A.* 2C:15–1.

## IV

The defendant's argument that his conviction of aggravated assault should be merged with the conviction of robbery in the first degree presents a more difficult question. Considerations of former jeopardy have guided courts in merger issues. Courts have relied on tests such as the "same evidence", *State v. Labato,* 7 *N.J.* 137, 144 (1951), or the "same transaction", *State v. Roller,* 29 *N.J.* 339, 345 (1959).

In recent years the Court has eschewed the mechanical application of formulas to resolve whether prosecution for any part of a single crime bars any additional prosecution for the whole crime or any constituent elements of the whole crime. *State v. Best,* 70 *N.J.* 56, 62 (1976); *State v. Davis,* 68 *N.J.* 69, 81 (1975); *State v. Gregory,* 66 *N.J.* 510, 514–17 (1975). Instead, the Court uses

> ... a certain flexibility of approach ... attended by considerations of "fairness"
> .... Such an approach would entail analysis of the evidence in terms of,
> among other things, the time and place of each purported violation; whether the

proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed. Certainly there are other factors to be considered and, along with the above, accorded greater or lesser weight depending on the circumstances of the particular case. [*State v. Davis, supra,* 68 *N.J.* at 81–82].[10]

In *Davis,* convictions on separate counts of unlawful possession and unlawful sale of a controlled dangerous substance did not merge where the evidence indicated that possession was not "purely incidental to imminent distribution." *Id.* at 83–84. The Court found a clear legislative intent, *id.* at 78, to punish each separate "stage of the drug trade—possession, marketing and ultimate distribution," *id.* at 82 n. 7, and there was "no coincidence of proof," *id.* at 83. It considered federal analysis in *Gore v. United States,* 357 *U.S.* 386, 78 *S.Ct.* 1280, 2 *L.Ed.2d* 1405 (1958), which held that convictions for offenses under separate federal statutes concerning narcotics did not violate the double jeopardy clause.

Relying on these principles, the *Best* court held that the conviction of possession of a dangerous knife that sustained a conviction of armed robbery merged with the latter conviction. In that case, the elements of possession of a dangerous weapon under *N.J.S.A.* 2A:151–41(c) and of possession of a knife during the commission of a robbery under *N.J.S.A.* 2A:151–5 were identical and likewise the proofs were identical. *Best, supra,* 70 *N.J.* at 65–66.

The *Best* court distinguished cases in which merger was denied "because the proofs supporting one offense [were] nei-

---

[10]The Code, *N.J.S.A.* 2C:1–8, mirrors this judicial analysis by setting forth a series of factors that help a court determine whether to bar multiple convictions for conduct that constitutes more than one offense. In particular, *N.J.S.A.* 2C:1–8(d) calls for merger when one offense is established by proof of the same or less than all of the facts required to establish the commission of another offense charged even when the included offense is nonindictable.

ther components of nor comparable to proofs supporting the other." *Best, supra,* 70 *N.J.* at 67 (citing *State v. Boening,* 63 *N.J.Super.* 588 (App.Div.1960)). In *Boening,* convictions of armed robbery and atrocious assault and battery did not merge because in the posture of the case (a motion to vacate pleas to both offenses) the court could not determine whether the facts necessary to sustain each conviction were identical. That court noted that although it was possible that the "defendant, while armed with a revolver, struck . . . and maimed the [victim] and then and there took money from his person . . . ," it was also possible that the defendant could have forced the surrender of the money by threatening the use of the gun and later could have wounded him. *Id.* at 594–95. In such a case, the evidence sufficient to sustain a conviction of armed robbery under then *N.J.S.A.* 2A:151–5 would not have sustained a conviction of atrocious assault and battery under then *N.J.S.A.* 2A:90–1 since there was no wounding involved in the threatened use of the gun. To the same effect is *State v. Ortiz,* 124 *N.J.Super.* 189, 192 (App.Div.1973) ("defendant was found in possession of the knife when he was apprehended *an appreciable time* subsequent to the robbery") (emphasis added). *See also State v. Carlos, supra,* 187 *N.J.Super.* 406 (convictions for robbery based on being armed with deadly weapon and aggravated assault based on actual shooting did not merge).

 In this case, however, the proofs to sustain the aggravated assault and the robbery in the first degree were identical. The trial court refused to merge the offenses because it found that the jury could have separated the defendant's first lunge at the officer and shoulder injury from the subsequent struggle over the officer's gun. But the purported segments of the episode lack the separation in time described by Judge Goldmann in *State v. Boening, supra,* 63 *N.J.Super.* at 595, that

distinguishes the offenses under the "same transaction" test. Here the same physical acts necessarily gave rise to the distinct grade of both offenses.[11]

Moreover, in terms of legislative purpose and the consequences of the act, *see Best, supra,* 70 *N.J.* at 70, the predominant legislative purpose, judged by the severity of the sentence, is to punish the violent theft. We recognize, as the *Best* court did, that the Legislature may fractionalize a single criminal episode into separate offenses when the Legislature intends them to be punished separately and when the fractionalization does not offend constitutional principles. *Best, supra,* 70 *N.J.* at 69 (citing *State v. Davis, supra,* 68 *N.J.* at 78). But we believe that under the particular facts of this case, the legislative scheme does not contemplate separate convictions. A conviction of robbery as a result of the infliction of serious bodily injury has been made a crime of the first degree, the highest crime

---

[11] Other jurisdictions merge or would merge the offenses under similar circumstances. *Sherley v. Commonwealth,* 558 *S.W.2d* 615, 617 (Ky.Sup.Ct. 1977), *cert.* den., 435 *U.S.* 999, 98 *S.Ct.* 1655, 56 *L.Ed.2d* 89 (1978) (assault conviction merged with first degree robbery and rape convictions both enhanced by the assault; consecutive sentence for assault reversed); *State v. Bigham,* 628 *S.W.2d* 681, 682 (Mo.Ct.App.1982) (conviction of robbery in the first degree reversed and remanded for failure to instruct on lesser included offense of assault); *Commonwealth v. Ayala,* 492 *Pa.* 418, 424 *A.2d* 1260, 1263 (Pa.Sup.Ct.1981) (conviction for aggravated assault merged with conviction for attempt to commit robbery for purposes of sentencing; consecutive sentence for assault vacated). *But see State v. Gregory,* 108 *Ariz.* 445, 501 *P.* 2d 387, 391 (Ariz.Sup.Ct.1972) (convictions of assault with deadly weapon and robbery did not merge where defendant ordered victims to lie on floor after robbery had been completed); *State v. Mays,* 105 *Ariz.* 47, 459 *P.2d* 307, 308 (Ariz.Sup.Ct.1969) (convictions of assault with deadly weapon and robbery did not merge because robbery does not require use of deadly weapon); *Vaughn v. People,* 175 *Colo.* 124, 485 *P.2d* 878, 879 (Colo.Sup.Ct.1971) (convictions of assault with deadly weapon and aggravated robbery did not merge where defendant struck victim after commission; concurrent sentence upheld); *Williams v. State,* 162 *Ga.App.* 61, 290 *S.E.2d* 155, 156 (Ga.Ct.App. 1982) (multiple convictions of armed robbery and aggravated assault of policemen upheld where defendant took money from manager by threatening, then took policeman's revolver and shot that officer and others).

other than murder of which one can be convicted. The sentence for such a crime ranges from 10 to 20 years with a presumed sentence of 15 years imprisonment, *N.J.S.A.* 2C:43–6 a(1), 2C:44–1 f, and a possible period of 10 years without parole eligibility, *N.J.S.A.* 2C:43–6 b. The sentence for second degree aggravated assault under *N.J.S.A.* 2C:12–1 b(1) ranges from 5 to 10 years. *N.J.S.A.* 2C:43–6 a(2).

One of the salient features of the Code is its emphasis on sentencing as an integral part of the criminal disposition process. *See State v. Des Marets,* 92 *N.J.* 62 (1983) (mandatory minimum term for certain offenses). *See also* Report of the Criminal Disposition Commission (December 1982). In light of this emphasis and the additional power under *N.J.S.A.* 2C:43–7 a(2), 2C:44–3, to impose an extended sentence upon certain first degree offenders, we are satisfied that the legislative purpose is served in these circumstances by a single conviction of the greater offense of robbery in the first degree. The court imposed a sentence in excess of the presumed term, setting it at 18 years with 7 years of parole ineligibility.[12]

Had the conviction of aggravated assault been based on *N.J.S.A.* 2C:12–1 b(5), assault upon a law enforcement officer acting in the performance of his duties, the merger considerations would be different for several reasons. First, the nature and extent of the facts necessary to prove each offense would be strikingly different since there is no necessity to prove the "serious bodily injury" and there is an additional fact to be

---

[12]In this case the single violent act is used to enhance two offenses. It elevates robbery to a crime of the first degree and aggravated assault to a crime of the second degree. In an analogous situation under the federal Gun Control Act, the Supreme Court stressed that the enhancement of two sentences based on the single act of possession of a weapon violates the double jeopardy clause of the Fifth Amendment. *Busic v. United States,* 446 *U.S.* 398, 401–02, 100 *S.Ct.* 1747, 1750–51, 64 *L.Ed.*2d 381, 386 (1980). We do not reach that constitutional issue here.

proved: the status of the victim as a police officer. Second, the legislative concern for the status of the police may well evidence a specific intent to fractionalize the offense. Third, the offense of simple assault on an officer is of a lower degree than aggravated assault.[13]

We note only that this case was neither tried nor presented to the jury as a simple assault upon a police officer. The court's charge on the aggravated assault count specifically required the jury to find "serious bodily injury." The jury itself focused specific concern upon this issue and asked to be reinstructed upon "[t]he elements of robbery—first degree and aggravated assault." The jury was recharged in the original terms with the focus of law and fact upon this aspect of the criminal episode. We believe that these circumstances require merger of the offenses.

The judgment of the Appellate Division is affirmed except as to the merger of the fifth (robbery in the first degree) and sixth (aggravated assault in the second degree) counts. The sentence and judgment of conviction on the sixth count of the indictment are vacated. The sentence remains undisturbed on all other counts with its aggregate term being 22 years with 7 years of parole ineligibility. The period of confinement remains the same.

---

[13]Cf. *State v. Richardson,* 73 *N.J.* 82 (1977) (convictions of assault and battery on an officer, robbery, and being armed while committing robbery were not merged; defendants used bludgeon to assault officer and steal his revolver). "[E]ach of the proscribed activities presented a separate and distinct danger which the Legislature determined to combat." *Id.* at 85. The Court merged the convictions of possession of a deadly weapon and possession with intent to use it unlawfully with the robbery conviction. *Id.* at 87. The Court noted that *State v. Moran,* 73 *N.J.* 79 (1977), held that if the State prosecutes and the jury convicts under both atrocious assault and battery and assault and battery upon an officer, the State should choose the conviction on which sentence is to be imposed. Absent such choice the court may impose sentence on either. In *Richardson,* the assault did not elevate the robbery as the present Code does in this case.

*For affirmance as modified*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI.

*For reversal*—None.