# Trudnak v. Lilley

R. *Stephen Shibla,* for plaintiff.
C. *Edward S. Mitchell,* for defendant.

McCLURE, *P.J.,* March 14, 1986 — Plaintiff, Richard J. Trudnak, filed a complaint in trespass against defendant, Jeffrey M. Lilley. The complaint states that defendant, after being signaled to stop by uniformed police officers, continued through a police roadblock/checkpoint and accelerated away from the police. Plaintiff, a police officer on duty at the roadblock/checkpoint, got into a passenger seat of a police cruiser which chased defendant. At a point approximately two miles from the start of the chase the road surface changed from a hard blacktop type to a dirt and gravel type road surface. Defendant sped over the change in the road causing a cloud of dust. The police cruiser passed into the cloud, went off the roadway and crashed into a culvert, at which time plaintiff was injured.

Defendant answered the complaint and alleged new matter which, inter alia, states:

(21) Any recovery by plaintiff is barred by the "fireman's rule" applied to police officers.

(22) Plaintiff voluntarily assumed the risk of exposure to the hazards necessarily and inevitably connected with the performance of his duties and the risk of injury in a pursuit was one of the hazards necessarily and inevitably connected with the performance of plaintiff's duties.

(23) Plaintiff was owed no duty of care from citizens whose negligent acts created the need for plaintiff's presence.

(24) Plaintiff's sole remedy is to look to the commonwealth of Pennsylvania for compensation for any injuries sustained in plaintiff's line of duty.

(25) Plaintiff was indirectly an employee of the general public.

(26) The compensation paid to police officers reflects, in part, the dangerous risks of police work which includes the risks of protecting citizens from the consequences of their own careless acts and to permit plaintiff to recover from defendant for injuries sustained in the performance of his duty would in effect amount to double compensation.

(27) Public policy is against exposing citizens such as defendant to liability for the negligent acts giving rise to the need for police services.

Plaintiff then filed preliminary objections to defendant's new matter in the nature of a motion to strike paragraphs 21 through 27 as impertinent matter, i.e., defenses to plaintiff's claims not permitted under the law of Pennsylvania.

Argument was held, the matter briefed and the issue is now before the court for disposition.

## PROCEDURAL POSTURE

The standard for analyzing allegedly impertinent matter is as follows:

"Impertinence in a pleading is the averment of a fact or facts which are irrelevant to the material issues and which, whether proven or not, or whether admitted or denied, can have no influence in leading to the result of the judicial inquiry. When the allegations do not appear to be wholly irrelevant, the allegations will not be stricken for impertinence." *Lyme v. Olewine Sr., etc.,* 3 D.&C.2d 112, 114 (1955) (citations omitted); See also, 5 Standard Pa. Practice 2d §25:50.

More specifically, our Supreme Court in *Jefferies v. Hoffman,* 417 Pa. 1, 207 A.2d 774 (1965) states:

"[I]t [is] incumbent upon [this] court to determine whether the facts averred in the new matter [are] legally relevant to *plaintiffs'* cause or whether they could have any influence in leading to the result." (citations omitted) (emphasis added).

Furthermore,

"A motion to strike the new matter as not pertinent is like a demurrer to the new matter. (citations omitted) 'All that a demurrer does is to admit the facts for the *sole purpose* of testing the legal sufficiency of the challenged pleadings; what it says in effect is that even if the facts set forth be true they do not constitute a legal claim, or defense to the claim, as the case may be . . . .' " Id.

Defendant has not pleaded facts, per se, which are a defense, but has stated general conclusions of law which comprise the fireman's rule. The question for this court is, therefore, whether or not the fireman's rule as a whole or in its component parts is relevant to this police officer's case against a citizen who has violated traffic laws resulting in the police officer's injuries. For the following reasons, plaintiff's motion to strike shall be granted and paragraphs 21 through 27, both inclusive, of the defendant's new matter shall be stricken as impertinent.

## DISCUSSION

The fireman's rule, stated generally, is a rule of law which originally prevented the tort liability of landowners to firemen entering their property to fight fires caused by the negligence of the landowners. This rule was based on the status of a fireman as a mere licensee, causing the duty owed by the landowner to be only to refrain from wantonly or willfully injuring him. *Pottebaum v. Hinds,* 347 N.W. 2d 642, 644 (Iowa, 1984). The fireman's rule has since developed into a more far reaching theory of law, applying to several classes of public servants. However, the fireman's rule has not been adopted in name or substance by Pennsylvania appellate courts.[1]

### Refusal to Adopt Fireman's Rule

Defendant incorrectly implies in argument that the fireman's rule is *only* a specialized application of the theory of assumption of the risk. It is not based *only* on such specialized application. Originally it was based on strained classifications of firemen under landowner liability theories, e.g., a fireman as a mere licensee. See supra, 5-6. It has since been supported in different jurisdictions by theories of implied assumption of the risk and/or general policy theories. As stated in *Pottebaum v. Hinds*:

---

1. Defendant states that "no Pennsylvania appellate or trial court authority could be found on point." The court would point out that a 1931 Philadelphia County case directly addresses the substance of the fireman's rule without adopting the name. See *Suttie v. Sun Oil Co.,* 15 D.&C. 3 (1931). Other Pennsylvania cases directly affecting this court's decision will be cited.

"Historically, the rule arose in the context of the differing duties owed by a landowner or occupier to individuals coming on his land. Since a policeman or fireman was privileged to enter land pursuant to his public duties and could come on property any place or time, courts classified them as bare licensees and held the only duty owed these public servants was to not wantonly or willfully injure them. Some jurisdictions still rely on this rationale to limit liability to public safety officials. See e.g., *Whitten v. Miami-Dade Water & Sewer Authority*, 357 So.2d 430, 432 (Fla. App., 1978) ('once upon premises, fireman or policeman has legal status of licensee and sole duty owed him by owner or occupant is to refrain from wanton negligence or willful misconduct and to warn him of any defect or condition known to owner or occupant to be dangerous, if such danger is not open to ordinary observation') (citations omitted). We have backed away from conclusively basing a land possessor's duty of care on the status of the injured party. *Rorsenau v. City of Estherville*, 199 N.W. 2d 125, 136 (Iowa, 1972). Moreover, basing the fireman's rule on the status of the injured party would seem to unfairly limit the rule's application to landowner/occupant context, thus denying liability for negligent acts of these individuals but not for others whose negligent acts injure police officers or firemen elsewhere.

"Other courts rely on the assumption of the risk doctrine to bar recovery for damages caused to policemen or firefighters from those risks that are inherent in their jobs. E.g., *Armstrong v. Mailand*, 284 N.W. 2d 343, 352 (Minn., 1979) (In a wrongful death action, fireman's primary assumption of the risk can be invoked to relieve defendants other than landowners of their duties with respect to reasonably apparent risks that were part of firefighting.);

*Steelman v. Lind,* 97 Nev. 425, 427-28, 634 P. 2d 666, 667 (1981) (Public safety officer, in accepting salary and fringe benefits assumes all normal risks inherent in employment as a matter of law and may not recover from one who negligently creates such a risk); *Lipson v. Superior Court,* 31 Cal. 3d 362, 371, 182 Cal. Rptr. 629, 635, 644 P. 2d 822, 828 (1982) (A fireman only assumes hazards which are known or can be reasonably anticipated at the sight of the fire).

"Still others rely on public policy considerations in limiting recovery for injuries incurred by public safety officers while performing in an official capacity. See e.g., *Berko v. Freda,* 93 N.J. 8.1, 459 A.2d 663, 666 (1983); *Walters v. Slone,* 20 Cal. 3d 199, 142 Cal. Rptr. 152, 571 P.2d 609 (1977); *Hass v. Chicago, Northwestern Ry.Co.,* 48 Wis. 2d 321, 179 N.W. 2d 885 (1970). Regardless of the rationale invoked to support the rule, courts almost universally recognize that neither a fireman nor a policeman can recover when their complaint is based on the same conduct that initially created the need for the officer's presence in his official capacity. See e.g., *Berko v. Freda,* 93 N.J. 81, 459 A.2d 663 (1983); *Steelman v. Lind,* 97 Nev. 425, 634 P.2d 666 (1981); *Garcia v. City of So. Tucson,* 131 Ariz. 315, 640 P.2d 117 (App. 1981); *Whitten v. Miami-Dade Water & Sewer Authority,* 357 So.2d 430 (1978); *Walters v. Sloan,* 20 Cal. 3d 199, 142 Cal. Rptr. 152, 571 P.2d 609 (1977); *Clark v. Corby,* 75 Wis. 2d 292, 249 N.W. 2d 567 (1977)." *Pottebaum v. Hinds,* supra, at 644-5.[2]

---

2. Defendant argues that this rule of law should be adopted by this court so that paragraphs 21-27 of his new matter may stand in his pleadings to give defendant an opportunity to bar plaintiff's claim by virtue of plaintiff's status as a police officer, stating that the trend of authority is for adoption. See,

## Landowner Liability Theory

A landowner liability theory is inapposite to the facts of this situation as it involves a car chase over public highways, and not entry onto and injury within a landowner's property. Such an analysis would be irrelevant here and, therefore, useless.[3]

## Assumption of the Risk

It is worth noting that the general subject of assumption of the risk is a muddy pool indeed, and that murkiness alone speaks against adopting any rule of law based on the assumption of risk. *Rutter v. Northeastern Beaver County School District*, 476 Pa. 590, 437 A.2d 1198 (1981). ("The complexity of the doctrine [assumption of the risk] and its consequent difficulty of application are well illustrated in

---

*Pottebaum v. Hinds,* 347 N.W. 2d 642, 643 (Iowa, 1984). Notwithstanding such "trend," cf. *Christensen v. Murphy,* 678 P.2d 1210, 1218, fn. 10 (Or., 1984), and accompanying text, this court's reading of those cases cited by defendant, the cases in which Pennsylvania has touched on the issues involved here, and its own sense of logic and policy to be obtained demands disagreement with defendants argument. This court will not, therefore, adopt the firemans's rule and apply it to policemen. Furthermore, assuming arguendo, that the fireman's rule is Pennsylvania law, it is not considered applicable to this case.

3. Suffice it also to say that were such theories applicable, this court would not follow the minority' reflected in *Pottebaum* in such strained legalistic exercises. See *Suttie v. Sun Oil Co.,* 15 D.&C. 3 (1931) ("We are of the opinion that when an officer of government lawfully enters upon the premises of a citizen, he is not a mere trespasser, and that the property owner is not relieved of all duties towards him. However that may be, we do not think the true solution of the question before us lies in a determination of the legal status of a fireman in relation to the owner whose property is entered." Id. at 5).

the Restatement's analysis of the four discrete meanings of the term given at section 496A, comment c, 1-4," Id. at 1206.) (Plurality opinion; Flaherty, J. writing lead opinion.) *Schlemmer v. Buffalo, Rochester & Pittsburgh Ry. Co.,* 205 U.S. 8, 51 L.Ed 681 (1907) (Cases in Pennsylvania treat assumption of risk and contributory negligence as convertible terms. Id. at 1351 L.Ed at 686).

The assumption of the risk doctrine must now be applied only with great care. As stated by our Superior Court in *Fish v. Gosnel,* 36 Pa.S. 565, 463 A.2d 1042 (1983):

"Blurring the distinction between contributory negligence and assumption of the risk may have been acceptable before comparative negligence, as both contributory negligence and assumption of the risk would wholly bar recovery. However, since the advent of comparative negligence, 42 Pa.C.S. §7102 (effective September 7, 1976), careful attention to the nature of the judicially created assumption of risk defense has become essential to insuring the proper outcome of a case, for assumption of risk wholly bars recovery, whereas comparative negligence permits even a 50 percent negligent plaintiff to recover. E.g., *Bortner v. Gladfelter,* 302 Pa. Super. 492, 448 A.2d 1386 (1982). We are satisfied that in enacting the comparative negligence statute our Legislature did not intend to wholly abolish the assumption of risk defense. *Rutter v. Northeastern Beaver County School District,* supra, 496 Pa. at 617 n.2, 437 A.2d at 1211 n.2 (Roberts, J., dissenting). However, neither did it intend to extend application of the assumption of the risk defense in cases that have been traditionally evaluated primarily according to contributory negligence principles. *Carrender v. Fitterer,* 310 Pa. Super. 433, 456 A.2d 1013 (1983)." Id. at 1047-8.

Assumption of the risk is of two basic types — the primary type, which provides consent by the injured party to the tortfeasor for the injury, either expressly, e.g., written consent, or impliedly, e.g., by voluntarily entering into a relationship with a tortfeasor which shows waiver of any future right to complain of injury from that relationship. Prosser & Keaton on Torts, §68 Assumption of the Risk at n.10 and surrounding text (5th ed., 1984). The secondary type is that which is analyzed in terms of misconduct of the injured party and overlaps in theory and application with contributory negligence. Prosser & Keaton on Torts, §68 Assumption of the Risk at p. 481 (5th ed., 1984).

The fireman's rule, where supported by the assumption of the risk doctrine, is supported on the primary type. That is, the fireman/policeman has, by virtue of taking a fireman's or policeman's job, tacitly assumed all risks inherent in the scope of his job. *Berko v. Freda*, 459 A.2d 663, 665 (1983).

In *Krauth v. Geller*, 31 N.J. 270, 157 A.2d 129 (1960), as cited by *Berko*, the Supreme Court of New Jersey states:

"The rationale of the prevailing rule is sometimes stated in terms of 'assumption of risk,' used doubtless in the so-called 'primary' sense of the term and meaning that defendant did not breach a duty owed, rather that the fireman was guilty of contributory fault in responding to his public duty. Stated affirmatively, what is meant is that it is the fireman's business to deal with that very hazard and hence, perhaps by analogy to the contactor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for

which he is trained and paid. Probably most fires are attributable to negligence, and in final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for the risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in work-men's compensation benefits for the consequences of the inherent risks of the calling." [31 N.J. at 273-74, 157 A.2d 129 (citations omitted)]. *Berko,* 459 A.2d at 665.

Our Supreme Court has, without discussing it as the fireman's rule, denied insulation to negligent fire causers based on primary assumption of the risk doctrines and left the analysis to the secondary type assumption of the risk. *Ruhl v. Philadelphia,* 364 Pa. 214, 29 A.2d 84 (1943).

Justice Maxey (later Chief Justice), writing for the majority, adopted the lower court's language (Philadelphia Common Pleas Court, Bok, *P.J.*) and stated:

"As stated above, Ruhl was when he was killed in the place he was ordered to go and which was considered by his superior officer as safe. On this phase of the case the court below aptly says: 'It is what a fireman is doing at the time he is hurt that matters, not the mere fact he is a fireman.

". . . It clearly cannot be said as a matter of law that decedent as a fire patrolman assumed the risk of being killed in a gas explosion which resulted from a fire he officially attended. Such a risk was not ordinarily incident to the discharge of his duties nor did he have any actual or constructive knowledge of it with full appreciation of the special dan-

gers confronting him. There is no proof Ruhl smelled gas before the second explosion or that he had any reason to apprehend a second explosion of gas. There is proof that some of his fellow patrolmen smelled no gas. Ruhl had been at the scene less than 10 minutes. He went there to perform his duty. *It was for the jury to say whether Ruhl showed a want of care under the circumstances.*" Id. at 220-221[4] (emphasis supplied).

The statement, by our Supreme Court in discussing assumption of a risk, that it was for the jury to decide, i.e., to decide whether or not Ruhl showed a want of care, is a statement that his actions close in time to the explosion were to be analyzed by a jury on a misconduct analysis, an unreasonableness of action analysis, all of which is an analysis based on the secondary type of assumption of risk or contributory negligence, not implicit consent by virtue of his status as a fireman.

All cases cited by defendant deciding that the fireman's rule applies and bars recovery do so as a matter of law. To those jurisdictions it is not a question for the jury. This court interprets Ruhl to be, therefore, a rejection of the fireman's rule as based on a primary assumption of the risk doctrine.

This court is aware that in a Pennsylvania common pleas court, in the case of *Suttie v. Sun Oil Co.,* supra, fn. 1, an analysis of the issue based arguably on a primary assumption of the risk analysis was espoused. However, this court as did the federal district court in *Herman v. Welland Chemical Ltd.,* 580

---

4. The court would note here that *Ruhl* is also a good example of the confusion of contributory negligence and assumption of the risk doctrines referred to in *Fish v. Gosnell,* supra, as well as a confusion between the primary and secondary types of assumption of the risk.

F.Supp. 823 (M.D., 1984), finds *Ruhl v. Philadelphia,* supra, a rejection of that theory and will not follow it:

"Hence to the extent that the fireman's rule is relied upon to support a per se rule of exclusion from recovery on the ground that firemen assume the risk of their on-duty injuries as a matter of law, it must be rejected." *Herman,* 580 F.Supp. at 832.

There being no Pennsylvania authority basing the fireman's rule on a secondary type assumption of the risk doctrine, and there being no objection to paragraphs of the complaint espousing such theory, its applicability need not be addressed here. In any event, assumption of the risk (secondary type) is not the normal analysis in auto negligence situations; contributory negligence is the proper analysis. *Fish v. Gosnell,* 316 Pa. Super. 565, 436 A.2d 1042, 1048-9 (1983); *Carrender v. Fitterer,* 310 Pa. Super. 433, 456 A.2d 1013 (1983). Those paragraphs of defendant's new matter concerning plaintiff's alleged contributory negligence adequately preserve the issue of plaintiff's reasonableness (or lack thereof) of action close in time to the incident.

### Policy

The policy analysis by this court depends directly on its view of the facts in relation to the policy theories of the fireman's rule. Here we have asserted against defendant, negligence in causing the injuries to plaintiff. However, the transaction or occurrence which placed plaintiff and defendant in their relationship was an intentional act on the part of defendant. Plaintiff asserts, and defendant does not deny, that the latter was clearly signaled to stop by the police, did not stop and sped away. Defendant knew or should have known, that the police would

give chase. In this respect, defendant can be considered as intentionally causing the chase.[5]

In *Berko v. Freda,* supra, relied on heavily by defendant here, defendant Freda left the keys of her car in the ignition, and the car was stolen. The thieves were chased and stopped by the police. When plaintiff, Officer Berko, opened the driver's door of the stolen car, the second defendant, Harrigan hit the gas pedal, and the car dragged plaintiff along, causing injury. In this case, Freda's negligence in leaving the keys in the ignition of the car was insulated by the fireman's rule. Harrigan's liability was unaffected. See also, *Pottebaum v. Hinds,* 347 N.W. 2d to 642 (Iowa, 1984) (Police officer assaulted by intoxicated patron of bar brings suit against the bar owner and patron. Bar owner insulated by fireman's rule for negligence in letting patron become intoxicated. Assaulting patron's liability left unaffected.)

In the situation at bar this court analogizes defendant Lilley's position with that of the theft in *Berko* or the bar patron in *Pottebaum.* His acts are not those of a property owner who got himself or herself into trouble by negligence causing the need for help from a public servant. His intentional violations of the law caused harm to the enforcer of the law. As such, there is no policy consideration which would support insulating him from liability.

---

5. Defendant's duty based on his relationship with the officer as a stranger was the general duty of reasonableness people owe each other based on foreseeability, *Zanine v. Gallagher,* 345 Pa. Super. 119, 497 A.2d 1332, 1334 (1985). Here, it is this court's opinion that it was at least foreseeable at the time that the officers would give chase and that one or more would be injured in an accident.

Notwithstanding the validity of the policy considerations of *Berko* insulating plaintiff Freda, such simply cannot be applied here in logic or fairness. As stated by the majority in *Berko*:

"Of course nothing in the fireman's rule prevents Officer Berko from suing the thief. This creates a paradox — since police fight crime, they must expect an occasional encounter with violence. Why then should they be permitted to sue a thief for personal injuries when they have assumed the risk that the thief might fight back? We resolve this paradox by observing that the public policy underlying the fireman's rule simply does not extend to intentional abuse directed specifically at a police officer. 'To permit this would be to countenance unlimited violence directed at the policeman in the course of the most routine duties. Certainly the policeman and his employer should have some private recourse for injury so blatently and criminally inflicted.' *Krueger v. City of Anaheim,* supra, 130 Cal. App. 3d at 170, 181 Cal. Rptr. at 634. No fundamental unfairness results from allowing an officer to sue a criminal. The crook does not summon the police for help. While police are paid to risk being assaulted, they are not paid to submit to a criminal assault. Cf. *State v. Mirault,* 92 N.J. 492, 499, 457 A.2d 455. ('We discern no legislative intention to discount assault upon police officers as though it were something to be expected, a part of the game, so to speak.')

"A subtler problem arises when the citizen who summons an officer injures him by a subsequent act of negligence. Since this subsequent negligence does not occasion the officer's presence, the rule does not apply. *Trainor,* supra, 86 N.J. at 407, 432 A.2d 23; see supra, 92 N.J. at 505-06, 457 A.2d 455. The reason for the distinction is just that the initial negligence prompts the police to perform their duty,

while the subsequent negligence hinders that performance. Just as *Krauth,* supra, saw no duty to exercise care so as *not* to require a firefighter's aid, we see no reason to eliminate the duty to exercise care once the firefighter or a police officer, begins to render that aid." *Berko* at 667-68.

. Lilley's acts in speeding away were as intentional an abuse directed at the police as if he had assaulted them. Perhaps it is not as clearly an intentional abuse directed specifically at police as stated in *Berko,* but the scenario would not have occurred but for defendant's intentional acts violative of the law. Still, no fundamental unfairness results in permitting liability against Lilley. It is the same here as if the thief did not fight back, but ran, and in running caused the police to be injured in the chase. Permitting as relevant defendant's submitted paragraphs would promote defendants to race away or elude police and take their chances on the highway. This, the court will not do.

Furthermore, on this issue, it is this court's understanding of Pennsylvania law that the vehicle laws are, inter alia, safety statutes designed to protect all present on the highways by having a common scheme for all drivers. Acceptance of defendant's argument would be tantamount to abrogation of any duty a citizen might owe to a police officer on the highway — in effect saying that the safety laws are not there to protect police officers on the road. With this, the court cannot agree.

In *Drake v. Fenton,* 237 Pa. 8, 85 Atl. 14 (1912), a fireman was injured by falling down an unguarded elevator shaft which was required by law to be guarded. The fireman was at the fire serving the public, protecting the building and public from the acts of its negligent owner. The court imposed a legal duty on defendant-owner running to plaintiff-

fireman based on the safety law involved. In discussing the analysis of the Pennsylvania safety statute in comparison to a Massachusetts' statute, the court in *Drake* adopts and cites the Supreme court of Massachusetts' reasoning in *Parker v. Barnard,* 135 Mass. 116, and states concerning that opinion:

"In the opinion of the court [Mass.] it was said, 'Where, therefore, in the construction or management of the building, the Legislature sees fit to direct by statute that certain precautions shall be taken or certain guards against danger provided, his unrestricted use of his property is rightfully controlled, and those who enter in the performance of a lawful duty, and are injured by the neglect of the party responsible, have just grounds of action against him. Were the case at bar that of a fireman who, for the purpose of saving property in the store or for the preventing of fire to other buildings, lawfully entered, in performance of his duty, and who was injured because there was no railing and trap doors guarding the elevator, he would have just grounds for complaint that the protection which the statute had made the duty of the owner or occupant to provide had not been afforded him.'

"The Act of 1903 was passed under the police power of the state. It is not restricted to a specific class but is general in its terms and it is a reasonable construction to hold that it was passed for the benefit of all persons lawfully on the premises, and that as to them it creates a duty, the breach of which may be actionable negligence. The provision that guards and enclosure gates shall be kept closed at all times when not in actual use and that trap doors shall be closed at the close of each business day, indicates a purpose to afford protection to city officers such as firemen and policemen who at any time

may be required to come on the premises." *Drake* at 11-12.

Here, as in *Drake,* we have not only the negligent violation of a safety law which imposes a duty, but the intentional violation of several vehicular traffic safety laws leading directly to damage. The Vehicle Code is unrestricted in the classes of persons it protects and this court will not permit nor adopt a new rule which does so. Evidence of the violations of a traffic law in Pennsylvania resulting in injury have long been a proof of negligence, unreasonableness; because the violations here resulted in injury to a police officer does not change the basic unreasonableness of such violations.

In analogy to *Drake,* our unrestricted use of highways is rightfully controlled and those lawfully in use of the same shall have just grounds against those unlawfully using the highways where injury results from such violations.

Again, in obviation of defendant's asserted policy arguments one of the main policy reasons which calls for the invocation of the fireman's rule is that a citizen will be promoted to self-help, or let danger grow if when he calls on the police, he were subjected to civil liability to the subsequently injured officer. As stated in *Suttie,* supra,

"An owner, facing knowledge that he risks being mulcted in damages by those whom he summons to aid in the extinguishment of a fire, would be strongly tempted by self-interest to temporize with the dangerous situation, to adopt his own means of saving his property, and to delay summoning aid until perhaps greater danger would be threatened to the public. To avoid this added public hazard, public policy requires those who, in the service of the state, enter premises to extinguish a fire, to look to their employer for proper compensation for injuries suf-

fered in the courageous performance of their public duties. *Suttie*, 15 D.&C. 3 at 5-6; see also *Christensen v. Murphy*, 678 P.2d 1210, 1217 (Or. 1984). (under-pinning of assumption of the risk removed, causing fall of the policy reasoning).

One need only attempt to apply this reasoning to our situation to see its inapplicability in a floodlight. Persons on the highway, while violating the traffic laws, simply do not call for the assistance of the police. There is, therefore, no reason to adopt a rule of law to promote the happening of a most unlikely event.

Perhaps here if defendant were the landowner of the ACF who called to have the kids removed or a person such as Freda by whose negligence the car was stolen, we would see the applicability.

However, we are not here dealing with a landowner or third party indirectly negligent. We deal with a direct intentional actor, who will not be shielded.[6]

### Assuming Arguendo the Rule Applies

Assuming arguendo that Pennsylvania has a fireman's rule, the facts here are such that the rule has absolutely no applicability.

The police were initially on the highway stopping cars coming out of a beer party adjacent to the highway. Upon seeing defendant's car, he was signaled to stop. Defendant, instead of stopping, proceeded through the stopping point and sped on up the road.

---

6. Furthermore, this court is persuaded by the intelligent and sound reasoning of Handler, *J.* in his dissent from the majority in *Berko* concerning the policy underlying the fireman's rule even were the same adopted in Pennsylvania and the facts here such that the fireman's rule did apply. *Berko,* 459 A.2d at 668-674.

The police followed and, while passing through defendant's dust, crashed.

The fireman's rule states: "The fireman cannot complain of negligence in the creation of the very occasion for his engagement. . . . The pertinent inquiry is whether or not the negligently created risk which resulted in plaintiff's injury was the reason for his being at the scene in his professional capacity." *Garcia,* 1640 P.2d at 1120.

As stated in *Berko,* this doctrine speaks only to the negligence that started the fire. "Case law draws a distinction between injuries stemming from the negligence that brought the firefighters or police to the scene in the first place and injuries suffered from independent causes that may follow." *Berko,* 459 A.2d at 665.

At three steps, any one of which is dispositive, this above analysis calls for the defendant's new matter to be declared impertinent.

It is clear from the pleadings that the police were originally at the checkpoint/roadblock for reasons other than the requests or acts of defendant. They were there ostensibly to stop underage drinkers coming out of an illicit beer party nearby. Therefore, plaintiff police officer was not at the "scene" because of any negligently created risk of defendant. Here, the court views the "scene" as the entire episode, from that point in time at which police sighted defendant's vehicle until the police car's violent stop.

Furthermore, assuming the police were at the scene by virtue of defendant's act, that is, the "scene" is viewed as the chase itself, the acts which created the risk are not acts of negligence; stupid — yes, negligent — no. The acts were intentional. Defendant in complete control of his car, having heard an order from one obviously a police officer to stop,

did not stop. Instead, he accelerated at a high rate of speed in an attempt to elude the officers. These are intentional acts, not negligent ones.

Assuming further that the police are at the scene (the car chase — by virtue of defendant's negligently created risks (running instead of stopping is negligence)), the act of passing over the break in the road at such a speed to cause a cloud of dust is an independent act of subsequent negligence for which liability cannot be insulated against by the fireman's rule.

Only if one limits the scene to the actual crash of plaintiff's car and defendant's acts causing his (plaintiff's) presence as passing over the blacktop to the gravel, could one possibly say the rule applies. To do this, the court would have to ignore reality and view the occurrence in a microcosm. Such is not and will not be the analysis of this court. In the least, the scene would have to be the initiation of the chase. The police were not behind defendant and did not pass into the cloud because defendant drove over the blacktop onto the gravel; they were behind him and passed into the cloud because he attempted to elude them and was speeding.

Paragraphs 21-27 of defendant's new matter, being conclusions of law encompassing the fireman's rule, are wholly inapplicable, irrelevant and can have no influence in leading to resolution of this judicial inquiry. They are, therefore, impertinent, and shall be ordered stricken.

## ORDER

And now, this March 14, 1986, for the reasons set forth in the accompanying opinion, it is ordered that:

(1) Plaintiff's motion to strike is granted.

(2) Paragraphs 21 through 27, inclusive, of defendant's new matter are stricken as impertinent.